EASTERN DIS.
July, 1841.

SKIPWITH
vs.
HIS CREDITORS.

## SKIPWITH vs. HIS CREDITORS.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE
PARISH OF EAST BATON ROUGE, THE PARISH JUDGE PRESIDING.

A judgment obtained in the last resort is final and conclusive between the parties to it; although it may not be so as to third persons: Nor can a change by the common debtor making a surrender, affect the rights of the judgment creditors who have a privilege or mortgage on the property ceded.

Testimony contained in a deposition must be disregarded which goes to show any thing contrary to or explanatory of a judgment between the parties; but may be proper to prove that one of the parties was in possession of a separate estate.

The record of a suit and judgment is admissible in evidence to show that it was rendered against a party who had surrendered certain slaves to be sold, although it might be insufficient *per se* to prove she had a title to them.

Acts or deeds under private signature, acknowledged before the mayor of a city, are *inadmissible* as evidence, when it is not shown he had authority to take the acknowledgment of witnesses to such acts or deeds.

The record of a suit pending in the Supreme Court of another State, is inadmissible in evidence when it is irrelevant and tends to controvert a judgment between the same parties in this State.

It is not enough that a party renders his rights and claim probable in a court of justice, he must make them legally certain.

On the 29th May, 1821, Fulwar Skipwith presented his petition with a bilan or schedule annexed, containing a detailed statement of his debts and claims of his creditors, also assets, property and effects, of every kind, which he surrendered for the benefit of all his creditors, and prayed for the usual stay of proceedings, and for general relief under the insolvent laws relating to voluntary surrenders.

Among the creditors placed on the bilan were Wm. Russell of Great Britain, by notes and mortgage for $11,500; amount due the heirs of Joshua Follansbie of Massachusetts, deceased, with interest $2,100. Due Louisiana State Bank by note and mortgage $2,400; due Mrs. Louisa V. Skipwith, $26,000 being the supposed proceeds of 640 acres of land, &c., and 11 slaves, being her property and sold to Josias Gray, with other slaves of F. Skipwith, on the 23d October, 1819.

There was a meeting of creditors who appointed John

Buhler, Esq. of Baton Rouge, syndic. On the 11th June, 1832, the syndic filed his tableau of distribution. The amount for distribution in hands of the syndic was $11,462 and $4,375 for future distribution. The privileged claims amounted to $2,166. Russell's heirs by special mortgage on proceeds of property sold were put down for $8,209; leaving a balance of their claim of $14,538 for which they are placed as ordinary creditors.

Mrs. L. V. Skipwith was placed as a creditor by special mortgage for $748, as having been paid by her to the Bank of Louisiana; and as an ordinary creditor for $5,263 paid by her to the heirs of Joshua Follansbie; and also for $26,000 as due her in her own right.

Russell's heirs and Mrs. Skipwith both made opposition to the tableau, and also to each other's claims. There was some other oppositions, but the two first mentioned are all that are material to be stated as the case now comes before this court. The nature of the claims of each party, the evidence produced, and the questions of law raised thereon are fully stated in the opinion of this court. The debt or claim of Russell's heirs has been severely contested in the trial of the present case, although liquidated and settled by a judgment of the court of the last resort. See the case of *Rawle for the use of Russell* vs. *Skipwith and wife*, reported twice in 8 *Martin N. S.* 118, 407. It was three times before the Supreme Court. The first opinion and judgment given, which was at the June term, 1828, has never been reported or published. It is now published for the first time, as an omitted case.

There was judgment confirming and homologating the tableau as relates to the heirs of Russell; also, for the mortgage claim of Mrs. Skipwith for $748, and her ordinary claim of $26,000; but rejecting her claim in right of and as subrogated to Follansbie's heirs. She appealed.

*Ogdens, Elam & Barton*, for the appellant, insisted that the judgment of Russell's heirs was not *res judicata* in this

EASTERN DIS. case. F. Skipwith was no party when it was rendered; hav-
July, 1841. ing made a surrender. Mrs. Skipwith was not competent to
SKIPWITH defend the suit, or take an appeal without the authorization of
vs.
HIS CREDITORS. her husband or the judge, and had neither.

2. The appellant was subrogated to Follansbie's right of
mortgage, having paid his debt, and should be preferred for the
amount of this claim.

*Thomas Gibbes Morgan*, for Russell's heirs, contended
that Mrs. Skipwith and her husband were in court when he
failed; and she was competent to carry on the defence of the
suit. She had bound herself *in solido* for the debt, and re-
nounced her right of mortgage. Judgment was properly
rendered against her for the entire debt. She cannot contest
the validity of either the judgment or the claim settled by it.

. 2. The debt paid to Follansbie's heirs was one for which
Mrs. Skipwith was already bound to pay, and she cannot make
any claim on the property surrendered, either by subrogation
or otherwise.

3. There is no legal evidence or proof of her claim against
the estate of her husband. Her opposition should have been
rejected, and the claim erased from the tableau.

*Bullard, J.* delivered the opinion of the court.

The syndic of the creditors of Skipwith, filed a tableau of
distribution in which the heirs of William Russell were classed
as mortgage creditors, and entitled to the whole amount of the
proceeds for which the property sold on which they had a mort-
gage, by assignment from the insolvent and his wife, to wit:
$8209. Mrs. Skipwith was set down as subrogated to the mort-
gage of the Bank of Louisiana on property surrendered, the pro-
ceeds of which are more than sufficient to discharge the mortgage,
being one-half the sum paid by her as joint obligor with her
husband. She is further put down as a creditor for $26,000, and
the heirs of Russell for $14,538 78, as the balance of his claim
after exhausting the mortgaged property. And Mrs. Skipwith

for a further sum of $5263, paid by her to the heirs of Follans-
bie. It is unnecessary to detail any further the claims which
figure on the tableau, inasmuch as the questions involved in the
case now before us relate altogether to the conflicting claims of
Russell and Mrs. Skipwith, either in her own right or as
assignee of Follansbie.

Mrs. Skipwith filed an opposition to the claim of the heirs
of Russell, in which she alleges that besides her claim in vir-
tue of her subrogation to the Bank of Louisiana, she is also a
creditor of the estate to the amount of $5263, for a debt of her
husband paid by her to the heirs of Follansbie, for which she
is legally subrogated and has the first and highest privilege and
mortgage upon the whole estate of her husband; that she was
coerced to pay said debt, notwithstanding the legal pleas and
exceptions opposed by her, and she alleges that the act of as-
signment by her to Follansbie in 1820 was made in ignorance
of her rights and to secure a debt of her husband. She alleges
that she is further a creditor of her husband for the sum of $12,500
with the highest privilege and mortgage, which she alleges she
paid to Daniel Clark, from the proceeds of fifty thousand acres
of land on the Ouachitta, a part of her separate and parapher-
nal estate. She further alleges that the debt due to her by
Gray, secured by mortgage on lands and slaves sold by her to
him, to wit: $45,000, was a part of her paraphernal estate,
and that her assignment to W. Russell of a part of the money
thus secured by mortgage was made by her in ignorance of her
rights to secure a debt due by her husband, and that a certain
judgment alleged by Russell to have been obtained by him against
the opponent, decreeing to him his recourse upon the said as-
signment for $11,500, was obtained by surprise without her
being heard in her defence; that the judgment is an interlocu-
tory or provisional one merely and not definitive or final, and is
open to all legal defences. And she avers that the claim of said
Russell, if any he have, is upon six promissory notes made to
him by the ceding debtor for his own separate debt. She fur-
ther alleges that the judgment above mentioned was rendered

and signed after the, cession of goods. The opposition embraces other matters which have either been expressly abandoned or not noticed in argument, and which consequently it is unnecessary to set forth.

To that part of the opposition, which relates to the effect and validity of the judgment by which the assignment to Russell was held to be valid and binding on Mrs. Skipwith, the heirs of Russell set up the exception of *res judicata*; and this presents the first question which it is proper to examine in this case.

The judgment which it is averred forms the authority of the thing adjudged, was pronounced by this court at the January term, 1830, in the case of Rawle for the use of Russell vs. Skipwith and wife, and is reported in 8 Martin, N. S., 407. The court held that the obligation which the wife contracted for her husband was negated by the acceptance of an assignment of a debt due by Gray, and that the assignment on the property mortgaged by Gray ought to be inforced. The formal decree of this court was " that the assignment by the defendant, L. V. Skipwith, to plaintiff, of a portion of the mortgage of Josias Gray to herself and husband on the 8th of September, 1821, be considered good and valid to the amount of $11,500 ; and it is further ordered and decreed that the plaintiff be at liberty to exercise against the land and slaves mentioned in said act of mortgage from Josias Gray to defendant, all rights of action which she, the said Louisa V. Skipwith, could or might of right exercise had the assignment mentioned in this decree of that part of said mortgage never been made."

It was in pursuance of this judgment that the heirs of Russell provoked the sale of the mortgaged property, the proceeds of which are in controversy between them and Mrs. Skipwith ; and the question is, whether she be precluded from setting up any claim which might tend to defeat her assignment, thus adjudged to be valid and binding upon her. We cannot doubt the conclusiveness of this judgment upon the parties. It was pronounced by the court of the last resort, and we cannot look

behind it. Nor do we understand how this judgment can be considered merely as *provisional*. It is said by the senior counsel of Mrs. Skipwith, in an ingenious argument, that the land and slaves subject to the mortgage had been already ceded to the creditors, and the concurso had been formed, and the first step should have been to have had this *provisional* judgment made final by having the privilege, if any, established contradictorily with all the creditors. To this it may be answered that a judgment may well be final and conclusive between the parties and not so as to third persons; and the object of this proceeding is to give effect to that judgment against third persons unless good cause can be shown to the contrary. The mortgaged premises *pendente lite* were surrendered to the creditors, but it is clear that such a change could not affect the rights of the mortgagee or of the heirs of Russell as assignees. If their mortgage existed before the surrender it still existed into whosoever hands the property might pass, until sold at a regular syndic's sale, for the purpose of paying the debts of the insolvent. Every judgment may in that sense of the word be regarded as provisional only; that is to say not conclusive upon persons not parties.

EASTERN DIS.
*July*, 1841.

SKIPWITH
*vs.*
HIS CREDITORS.

A judgment obtained in the last resort is final and conclusive between the parties to it; although it may not be so as to third persons: Nor can a change by the common debtor making a surrender, affect the rights of the judgment creditors who have a privilege or mortgage on the property ceded

The judgment in question authorizes the heirs of Russell under the assignment to exercise any action which Mrs. Skipwith, the original mortgagee and assignor, might have done, if no assignment had been made. They had therefore a right to cause the mortgaged property to be sold and to pay themselves the sum of $11,500, out of the proceeds, and no interference of Mrs. Skipwith could defeat that right. The property having gone into the hands of the syndic, the heirs of Russell retain their right to be paid out of the proceeds of the sale by preference as mortgage creditors.

In homologating the tableau, so far as relates to this claim, we think the District Court did not err.

The heirs of Russell on their part filed an opposition to the claims of the widow. They deny her claims either as a privileged or ordinary creditor; and this opposition brings before

the court the whole merits of the case as between the two op-
posing creditors. The opposition of Banks need not be noticed
as he is not before us, the only appellants being the widow
Skipwith and the heirs of Russell. We will consider her
claim first as it relates to the payment alleged to have been
made by her to the heirs of Follansbie and her subrogation to
their rights, which was rejected and disallowed by the court
below, and secondly, as to the debt due to the Bank of Louis-
iana and paid by her but disallowed by the court below, and
lastly, as to the amount allowed her on the tableau and by the
judgment of the District Court, as a privileged or mortgage
creditor.

1st. It is contended, that the heirs of Follansbie had an an-
terior claim by assignment, of a part of the mortgage of Josias
Gray, and that Mrs. Skipwith having paid said claim to the
amount of upwards of $5000, became thereby subrogated to
the rights of Follansbie on the proceeds of the mortgaged pro-
perty, and must be paid in preference to the heirs of Russell.
Admitting the facts to be as here stated, it would by no means
follow that Mrs. Skipwith would have a right to be paid in pre-
ference to the heirs of Russell. Follansbie had but an install-
ment of the same mortgage, and if he were now before the
court claiming to be paid out of the proceeds of the mortgaged
property, he would at most be entitled to come in concurrently
with Russsll, an assignee of such installment. But in point of
fact, it appears that the payment was made in pursuance of a
judgment rendered against her as a joint debtor. That judg-
ment must be held to be conclusive upon her as to creditors,
and the payment consequently extinguished the mortgage *pro
tanto*. The court did not therefore err in rejecting the claim.

The record abounds in bills of exceptions, presenting various
questions of law touching the admissibility of evidence, which
it is difficult to classify in such a manner as to condense our
remarks upon them. The trial was however by the court,
and as all the evidence was admitted notwithstanding the nu-
merous objections, and is now in the record, we may well

disregard such as we think ought to have been rejected, as illegal, and give effect to that which was in our opinion admissible, without remanding the case, if we should be of opinion that any was improperly admitted.

I. & II. The first and second bills of exception relate to the admissibility of the return of a commission, with the depositions of Mrs. Harris, A. Hennen, and others, which was objected to on various grounds, some of which relate to the character of the evidence itself, and some to the manner in which the commission was executed. It was objected that certain cross interrogatories had not been answered, but it appears upon inspecting the depositions that they were answered. The depositions were therefore in point of form admissible; but so far as the testimony went to show any thing contrary to or explanatory of the judgments rendered in the cases of Follansbie or Russell or is merely hearsay, it ought to be disregarded, but to have its proper weight so far as it tends to prove that Mrs. Skipwith was in possession of a separate estate.

*Testimony contained in a deposition must be disregarded which goes to show anything contrary to or explanatory of a judgment between the parties; but may be proper to prove that one of the parties was in possession of a separate estate.*

III. We are of opinion that the record of the case of the Bank of Louisiana *vs.* Skipwith and wife, was properly admitted in evidence notwithstanding the objection that the mortgage annexed showed that the slaves belonged to Skipwith, and that the sheriff's return was no legal evidence to show property in Mrs. Skipwith, although it showed that she had surrendered the property to be sold. The record was admissible to prove the transaction itself, although it might not be sufficient *per se* to prove title in Mrs. Skipwith.

*The record of a suit and judgment is admissible in evidence to show that it was rendered against a party who had surrendered certain slaves to be sold, although it might be insufficient per se to prove she had a title to them.*

IV. We are of opinion that the acts under private signature annexed to the deposition of Brockenborough are not duly proved and ought not to have been received in evidence; nothing shows that the mayor of Richmond has authority to take the acknowledgement of witnesses to such deeds, so as to render them authentic evidence, without proof by such subscribing witnesses on oath when the deed is produced as evidence of title. The deposition itself which appears to have been taken by the mayor as commissioner named in the *dedi-*

*Acts or deeds under private signature, acknowledged before the mayor of a city, are inadmissible as evidence, when it is not shown he had authority to take the acknowledgment of witnesses to such acts or deeds.*

*mus*, was properly received, reserving all exceptions to the competency of such evidence.

V. It follows from what we have already remarked of the conclusiveness of the judgment rendered by this court in the case of Rawle for the use of Russell *vs.* Skipwith et al., that an affidavit made by her in the progress of that suit in the District Court, with a view to obtain a continuance, was properly rejected when offered in support of her opposition in the present case.

*The record of a suit pending in the Supreme Court of another State, is inadmissible in evidence when it is irrelavant and tends to controvert a judgment between the same parties in this State.*

VI. We are of opinion that the court erred in admitting in evidence the record of a suit heretofore pending in the Supreme Court of Pennsylvania, between Russell & F. Skipwith, although it appears to have been duly authenticated according to the act of congress; because it was either entirely irrelevant or tended to controvert the judgment of this court in the case of Russell's heirs *vs.* Skipwith and wife.

VII. The depositions of Michel and Relf were objected to on the ground that cross interrogatories propounded by the heirs of Russell had not been answered; but from an inspection of the deposition it does not appear that the objection was well founded. There being in point of fact, answers to cross interrogatories.

It certainly appears that the parties were separate in property by the marriage contract, and that funds were invested belonging to the wife in the purchase of slaves. But the proof is not sufficient, in our opinion, to establish her claim to *It is not enough that a party renders his rights and claim probable* the sum of $26,000 which she demands as a simple debt against her husband, contradictorily with the creditors. The evidence is vague and indefinite; it is not enough that a party *in a court of justice, he must make them legally certain.* renders his right probable, he must make it legally certain. The marriage contract does not show that the wife brought property of any value into marriage, and only a small amount came to her from her mother's succession, which she herself appears to have received. In short, the legal evidence in the record has failed to satisfy us that the husband's estate

is chargeable with the sum of $26,000 which has been allowed on the tableau as a simple debt.

It is therefore ordered and decreed, that the judgment of the District Court so far as it orders the claim of Louisa V. Skipwith for $26,000 to be paid out of the funds in the hands of the syndic, be reversed and annulled, and that the same be stricken from the tableau of distribution.—And that it is further adjudged and decreed that in all other respects the judgment be affirmed; and that the tableau thus amended be finally confirmed and homologated, and that the costs of the appeal be paid out of the mass of the estate.