## MUMMY, LULING & Co. *v.* J. A. HAGGERTY & Co.

A party seeking to recover must make his claim certain, it is not sufficient to render it probable.

The acts of a principal will not amount to a ratification of a contract, when they are entirely based upon the representations of the agent, who was himself deceived as to the real existence of the thing which was the object of the contract.

There can be no valid ratification when the contract is without an object.

Where a factor, acting as the agent of another party, has employed a broker to make a purchase, and such broker, without seeing the merchandise, acknowledges a constructive delivery on a simple inspection of an entry in the books of the vendor and constituted depositary, it is such an act of imprudence as will render the factor liable for any loss that may occur from the bad faith of such vendor.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J. *Hunt & Denègre*, for plaintiffs. *T. J. & A. G. Semmes*, for defendants and appellants.

DUFFEL, J. This suit is brought to recover from the defendants the sum of $5,497 50, with interest from March 2d, 1858. There was judgment in the District Court in favor of the plaintiffs for the amount claimed, and the defendants appealed.

The only item in dispute is the sum of $4,502 25, it being the cost of a cargo of salt imported in the ship Humber. We will give a brief history of the case as disclosed by the evidence.

It appears that the defendants being dissatisfied with the sale of 9,171 sacks of salt, effected by the plaintiffs, according to a contract of pledge, said salt being held by plaintiffs, as collateral security, for advances made to defendants, they, the defendants, authorized one *I. M. Abrams*, (who it seems acted alternately on various other occasions, as the broker of the one or the other firm,) to call on the plaintiffs " and ask them to replace the old salt by buying a cargo of new at fifty-seven and a half cents," being two and a half cents per sack more than the price obtained for the old salt ; said *Abrams* thereupon made to the plaintiffs this proposition, " to buy new salt, or replace the old by new, at fifty-seven and a half cents," when the following correspondence was interchanged :

" NEW ORLEANS, March 1, 1858.

" *Messrs. J. A. Haggerty & Co.*, present :

" *Dear Sirs*—Agreeably to our verbal communications, and in consideration of seven hundred and fifty dollars cash being paid, and your note at sixty days satisfactorily endorsed, being given in liquidation of the balance, which, after the sale of fifty coils rope, may remain to your debit, we will accede to your request, and advance the cost of another cargo of new salt at fifty-seven and a half cents per sack, the said salt to remain in our possession, for your account, as collateral security of your note at sixty days, inclusive of interest, at eight per cent. for its cost. It is particularly understood, that the charges accruing on the salt, while in warehouse, such as fire insurance and storage, shall be paid by you monthly in cash, we having the privilege to sell the said salt, on or after the maturity of your said note, unless then paid in full, and to hold you responsible, for any short proceeds which such a sale, less two and a half per cent. commission, may leave against you. We are yours, very respectfully,

" MUMMY, LULING & Co."

"NEW ORLEANS, 1st March, 1858.

*Messrs. Mummy, Luling & Co.,* present :

" *Gentlemen*—In reply of your note of to day, we have to state, that we are not in a condition to offer an endorser ; or any other paper than our own in settlement of the account between us. As we consider the sale of our salt at fifty-five cents, made in opposition to an agreement entered into with your broker, and *Mr. Weeks,* your representative, we think that we are acting equitably in the matter, by proposing to pay two and a half cents per sack on the lot of new salt, which you offer to buy, to replace our consignment of old salt reported as sold, as aboved named at 55 cents. We further agree, to pay the storage and fire insurance on the new lot proposed to be bought, and stipulate that it shall be sold within sixty days, *if the above terms suit ;* we will pay interest to day of sale of salt, from the maturity of our note held by you, at the rate of ten per cent. per annum ; but *are not* in a situation to pay in addition to the above named charges, a commission of two and a half per cent.

" Very respectfully,

(Signed)                     " J. A. HAGGERTY & Co."

It was after the above correspondence, that *Abrams* (we quote from his testimony) received instructions from the plaintiffs to buy the new salt, which he did, after having ascertained from the defendants that the matter had been settled. It was the cargo of the Humber ; the purchase was made in the usual manner in which salt is bought ; the witness adds, that he took more than ordinary precaution in effecting the purchase ; examined the salt which stood on the books in the name of *Casey & Co.,* as having been transferred to them by *James Wilson & Co.,* whom he knew had imported the same. He was thus particular, because *Casey* had been speculating largely in the article, buying at large prices and selling at low ones ; *Casey* had in his warehouse, probably one-third of all the salt then in market ; his integrity and good faith was not at that time questioned. Witness obtained the receipt for the price, and the warehouse receipt from *Casey & Co.,* and delivered the same to the house of plaintiffs.

The defendants knew that the salt was the cargo of the ship Humber, but the witness did not communicate to them the name of the vendor, and thinks that he did not communicate to them where the salt was stored. The defendants instructed the witness, to sell the new salt at a fixed price, provided the plaintiffs were satisfied, and the salt was finally sold.

Shortly after this last sale, *Casey* absconded, when it was discovered that *Casey* had, prior to the purchase effected by *Abrams,* sold the same salt to two other parties, and to another party subsequently to such purchase by *Abrams.*

It is also in evidence, that there were twenty-nine claimants of salt in the insolvency of " *C. S. Martin* v. *His Creditors* and *The Creditors of T. J. Casey & Co.,*" some laying claim to several different cargoes, which were also claimed by others.

The plaintiffs having, in consequence of the prior right of the first purchaser of said salt from *Casey,* refunded to their vendee the amount by him paid, which amount they themselves had paid over to the present defendants, now seek to recover the same from the latter.

The defendants, in their brief, contend that *Abrams* acted as the agent of the plaintiffs, who were, in this transaction, their factors ; and that in as much as they, the plaintiffs, did not, in fact, buy any salt, and, therefore, never were in possession of the same, they have no cause of action. Besides, the plaintiffs hav-

ing waived the actual delivery of the salt, and accepted in lieu of it the ware-house receipt of the vendor, who was also the warehouseman, they have, by such unusual and imprudent conduct, forfeited all right of action against them.

In as much as the parties, plaintiffs and defendants, mutually charge in argument, that *I. M. Abrams* was, and acted as, the agent of the other party, we will again turn to the testimony. The witness, *Abrams*, says, that : " He carried several messages to and fro between the parties. These messages were in relation to the purchase of the new cargo. The reasons for these messages, witness thinks, were, for one, *Mr. Luling* had reluctance to advance the price for the new cargo ; and for another, there was a difference of two and a half per cent. on the new cargo."

Another witness, *J. J. Weeks*, the chief clerk of the plaintiffs, says in substance, that the proposal to buy the new salt, was made by *Abrams* in behalf of defendants, who agreed to pay the differance in the price, two and a half cents per sack, which proposal was answered by letter copied above ; that the letter was opened by the defendants in his presence, and after reading it, they, with the exception of the two and a half per cent. commission, acceded verbally to it. " Witness is positive that it was *Mr. Abrams* who came with the proposal to buy the new salt on behalf of defendants. *Abrams* acted as the broker. The proposal to buy the new salt included with it, that *Mr. Abrams* should be the agent to effect the purchase. *Mr. Abrams* was the broker who made the sale of the old salt."

The plaintiffs admit, most emphatically, that the plaintiffs acted as the agents of the defendants ; the petition set forth, " that all the above matters are set forth in the account-current hereto annexed and made part of this petition ; that said *Haggerty & Co.* neglect to pay petitioners said sum, or any part thereof, although in regard to the transactions relative to the salt, petitioners acted solely as the agents of said *Haggerty & Co.*," and we have on the debit side of said account-current on the date of 2d of March, 1858 : " to costs of 7,830 sacks Liverpool salt, cargo of ship Humber, purchased for their account at fifty-seven and a half cents per sack, $4,502 25."

With this fact patent before us, we will require positive and conclusive evidence to shift the position of the parties, so as to represent *Abrams* as the agent of the defendants and the plaintiffs merely as advancing the required funds to *Abrams*. The conversations between the defendants and *Abrams* do not warrant such a conclusion ; still less the letter from the defendants to the plaintiffs. *Abrams* received his instructions to buy from the plaintiffs and returned to them the account of sale and warehouse receipt ; the defendants are not even informed by their pretended agent, of the name of the seller and of the warehouse containing the salt. The only testimony, in opposition to this array of concurrent evidence, is that of the chief clerk of the plaintiffs, and it is not of a character to carry conviction, but is, in a degree, at variance with the statements furnished by the plaintiffs and with their books. *Abrams* was on the stand, yet he was not interrogated on this particular. A party seeking to recover, must make his claim certain ; it is not enough to render it probable. *Adams* v. *His Creditors*, 14 La. 454 ; *Skipwith* v. *His Creditors*, 19 La. 198.

The acts of the defendants did not amount to a ratification, for they were entirely based on the representations of the plaintiffs, who were themselves deceived as to the real existence of the thing which was the object of the contract. C. C. 1887, 1890, 1875, 1815, 1818, 1840 ; *Bradford* v. *Cook*, 4 An. 229 ; C. C. 2252.

We conclude from the evidence, 1st, that there was, and could be, no valid ratification, for the reason that the contract was without an object, a substance ; 2d, that *Abrams* was, as between the parties, a mere negotiator to induce the plaintiffs to buy new salt to replace the old salt, and that otherwise he acted as the broker of the plaintiffs ; and, 3d, that the plaintiffs acted as the agents and factors of the defendants.

We will now examine if the plaintiffs, as factors, have any just claim against the defendants for the amount invested in the purchase of the new salt. It is evident, that although the price was paid as charged, there never was a sale for the want of an object. C. C. 2414.

It will be conceded, that a mandatary is responsible for any damage that may result from his neglect of duty and want of prudence. C. C. 2971, 2972, 2993 ; *Kirkby et al.* v. *Armistead*, 11 R. 81; and his liabilities attaches equally to the acts of the sub-agent. C. C. 2976 ; Hennen's Digest, vol. 2, p. 892, No. 2.

The question which now presents itself is, did the plaintiffs, or their agent, *Abrams*, who made to them a report of the contemplated purchase, and returned to them the account of sale and warehouse receipt, both emanating from the same source, act prudently and in accordance with a well established and acknowledged custom ?

The broker, *Abrams*, did not see the salt, but acknowledged a constructive delivery on a simple inspection of an entry in the books of the vendor and constituted depositary. In the ordinary transactions between individuals, no prudent man would have so acted ; and we do not think that the evidence is such as to authorize us to declare the practice sanctioning commercial dealings. C. C. 3, 1961.

It is, therefore, ordered, that the judgment of the lower court be reversed. It is further ordered, that the plaintiffs have judgment against the defendants, *A. Haggerty & Co.*, and the individual members of said firm *in solido*, for the sum of nine hundred and ninety-five dollars and twenty-five cents, with interest at six per cent. per annum from 2d of March, 1858, till paid, and the costs of the court *a quâ*. It is further ordered, that the claim for the new salt, being four thousand five hundred and two dollars and twenty-five cents, be rejected ; and that the plaintiffs pay the costs of the appeal.

LAND, J., absent.