(80 South. 727)

No. 21377.

ROSE v. SHAW.

(April 1, 1918. On Rehearing, Jan. 6, 1919. Second Application for Rehearing Denied Feb. 3, 1919.)

*(Syllabus by Editorial Staff.)*

1. PRINCIPAL AND AGENT ☞78(6)—ACCOUNTING—EVIDENCE.

In an action for the balance of an amount received by defendant to invest and account for, wherein the issues were purely issues of fact, plaintiff, to recover, must prove his claim with reasonable certainty and by preponderance of the evidence.

On Rehearing.

2. PRINCIPAL AND AGENT ☞78(4)—ACCOUNTING—BURDEN OF PROOF.

In action for balance of an amount intrusted to defendant for investment, wherein the answer admitted that he had received the amount from plaintiff to be invested by him as plaintiff's agent, defendant had the burden of proving payment.

3. BILLS AND NOTES ☞211—TRANSFER—DELIVERY.

A note payable to the order of the maker and indorsed by him was transferable by mere delivery.

4. PRINCIPAL AND AGENT ☞78(6)—RECEIPT OF MONEY BY AGENT—EVIDENCE.

In an action for balance of an amount intrusted to defendant for investment, evidence, aside from defendant's acknowledgment in authentic deed of sale of a farm purchased by him on plaintiff's account that he received from the purchaser a cash payment of $800, *held* to show defendant's receipt of that amount from purchaser.

5. PRINCIPAL AND AGENT ☞78(6)—AGENT'S RECEIPT OF NOTE—EVIDENCE.

In an action for balance of an amount intrusted to defendant for investment, evidence, in addition to defendant's acknowledgment in the authentic deed of sale of a farm purchased by him for plaintiff's account, that he received a mortgage note of $1,000 from the purchaser, *held* to show his receipt of such note.

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by H. Crawford Rose against Dr. Guy A. Shaw. Judgment for defendant allowing his reconventional demand, and plaintiff appeals. Reversed, and ordered that plaintiff recover a certain amount, with interest, as reduced by a reconventional demand.

L. T. Dulany, of New Iberia, for appellant.

Burke & Smith, of New Iberia, for appellee.

LECHE, J. Plaintiff prays for judgment against defendant in the sum of $3,196.30, with 8 per cent. interest from February 17,

1915. The transaction out of which plaintiff charges his claim to have originated is by him alleged as follows:

"2. That under an agreement made by the said defendant, petitioner placed in the hands of defendant, two thousand five hundred dollars in money on the 19th day of February, 1906, and another two thousand five hundred dollars on the 5th day of March, 1906, to be invested by the defendant as he might deem proper; the said defendant to pay to your petitioner eight per cent. per annum interest on the said amount, so long as same was not returned to your petitioner."

Plaintiff then alleges various credits, charges for interest, and an additional charge for proceeds of a farm sold for his account by defendant, and, after adding and deducting these various items, concludes by praying for judgment in an amount which he represents as the balance due him on February 17, 1915.

The answer admits the two deposits of $2,500 each, which were to be invested by defendant for account of plaintiff, but denies any agreement on the part of defendant to pay any interest on said deposits except such interest as might be earned by investments on loans made to other persons. Defendant further alleges a full and complete accounting to plaintiff, denies owing the latter anything, and claims in reconvention the sum of $375.77 for drug bills and money paid to satisfy a judgment due by plaintiff to the Elgin Banking Company.

The district court rendered judgment against plaintiff and in favor of defendant, allowing the latter's reconventional demand, and plaintiff appeals.

[1] The issues in this case are purely of fact, and in order to entitle him to recover it must appear that plaintiff has proved his claim with reasonable certainty and by a preponderance of evidence. The agreement alleged by him is denied by defendant, and is not established by a preponderance of evidence. The conflicting testimony of the parties not only leaves the mind in an absolute condition of uncertainty, but if the improbable character of the alleged agreement be considered, the conclusion is almost irresistible that plaintiff's version of it is erroneous. That an intelligent business man, as we judge defendant to be, should agree to act as agent of another person, for the purpose of investing that person's funds and at the same time bind himself to pay him (the investor) 8 per cent. interest on said funds, even though they were not yet loaned or invested, is not only unreasonable, but might properly be considered, owing to the fact that the agent would be giving something for nothing, as ground to justify suspicion as to the agent's good faith. Such an agreement would require clear and convincing proof to establish its existence. We are therefore of the opinion that the parties agreed as contended by defendant, and not as alleged by plaintiff. This finding disposes of the items for unearned interest, which plaintiff claims from the defendant.

A much contested charge in plaintiff's account is one for $1,800, alleged to be the proceeds of a farm bought by defendant in his own name for $1,705, and subsequently sold by him to a Mr. Gonsoulin. The evidence shows that defendant bought the property as alleged and sold it for $1,800, of which amount Mr. Gonsoulin, the purchaser, paid $800 cash and gave his note for $1,000 in representation of the balance of the purchase price. The title to the property remained in the name of defendant for about two years, during which time plaintiff was continuously in possession, and the sale to Gonsoulin, though signed by defendant, was negotiated by plaintiff himself, and it appears that plaintiff received the cash payment of $800 by check dated March 24, 1908.

The evidence further shows that plaintiff used the $1,000 note of Gonsoulin, as collateral, to borrow funds from the State National Bank, and that he finally indorsed receipt of payment in full on said note when it was taken up by Gonsoulin. It would serve no useful purpose to discuss the several other items of charges in plaintiff's account. Suffice it to say that the correctness of the account rendered by defendant is confirmed by canceled checks and by letters, and appears to be well established. Such were the conclusions of the district judge, and they seem to us to be well sustained by the evidence in the record.

Judgment affirmed.

### On Rehearing.

O'NIELL, J. Appellant complains that we have erred in approving the charge of $800 against him on the account rendered, and in not requiring the defendant to account for the mortgage note of $1,000, received in part payment of the price for which he sold the farm that had been paid for with plaintiff's funds. In other words, appellant contends that, if he is to be charged with the $800 that he received on the 24th of February, 1908, he should have credit for the $1,800, for which defendant sold the farm that he had bought with plaintiff's money, and for which defendant has charged the purchase price on the account rendered by defendant.

[2] In that connection, counsel for appellant argues that the defendant, having admitted, in his answer to this suit, that he had received the $5,000 to be invested by him as plaintiff's agent, had to account for it, and bore the burden of proof of payment. The argument is unanswerable.

The account rendered by defendant on the 11th of March, 1911, when he sent plaintiff a check for $1,078 to balance the account, was as follows, viz.:

H. C. Rose, in account with Dr. Guy A. Shaw.

| | | Dr. | Cr. |
|---|---|---|---|
| Deposit | ............................ | | $5,000 00 |
| Nov. 28, 1906. | Interest collected.. | | .266 65 |
| " " " | To cost of farm... | $1,705 00 | |
| Feb. 24, 1908. | Interest collected.. | | 351 00 |
| " " " | To check.......... | 800 00 | |
| Aug. 4, 1908. | Interest collected.. | | 103 35 |
| " " " | To check.......... | 1,200 00 | |
| Apl. 5, 1909. | Interest collected.. | | 66 65 |
| " " " | To checks......... | 350 00 | |
| May 9, 1910. | To amount paid for insurance, etc.... | 654 66 | |
| Mar. 11, 1911. | To check to balance ............. | 1,077 99 | |
| | | $5,787 65 | $5,787 65 |

[3] Of the debit item of $1,705 in the foregoing account, $1,700 represents the price paid for the farm bought by defendant on the 28th of November, 1906, in his own name, but for the use and benefit of the plaintiff and with his funds, and $5 represents the fee paid to the notary public for the act of sale. The plaintiff occupied the farm, and it was really his, although the title remained in defendant's name. Thereafter plaintiff negotiated a sale of the property to one Gonsoulin for $1,800, and the defendant, with plaintiff's consent and for his account, sold the farm to Gonsoulin for $1,800 on the 14th of February, 1908. The authentic act of sale contains the acknowledgment of defendant, as vendor, that he received, as the price, $800 "in cash, current money," together with the purchaser's promissory note for $1,000, payable on the 15th of November, 1908, and secured by mortgage and vendor's lien on the property. The note, being payable to the order of the maker and indorsed by him, was transferable by mere delivery.

The defendant, in his testimony, denied that he had received from Gonsoulin either the cash payment or the mortgage note. He could not remember that the plaintiff received either the cash payment or the mortgage note from Gonsoulin. The plaintiff testified positively that he was not present when the sale was made, and there is no contradiction

of his statement. The defendant and Gonsoulin each testified that he could not remember whether the plaintiff was present at the sale, and neither of the witnesses who had signed the deed testified in the case. We have no reason for rejecting the uncontradicted statement of the plaintiff, on oath, that he was not present at the sale and did not receive the cash payment or mortgage note from Gonsoulin. In fact, the attorney who represented the defendant in the trial (not one of the attorneys representing him on appeal, however), testifying as a witness for defendant, voluntarily disclaimed any intention of intimating that the plaintiff was "unworthy of belief, or that he would give false evidence." If he had been present at the sale, it is not likely he would have forgotten the fact.

[4] Aside from the defendant's acknowledgment in the authentic deed that he received from Gonsoulin the cash payment of $800, and the mortgage note for $1,000, is the corroborating circumstance that the defendant remitted his check to plaintiff for $800 ten days after making the sale. Defendant denied that the remittance was for the $800 paid by Gonsoulin; but he gave no further explanation of the matter than that plaintiff "must have asked for money, and it was there to his credit to be returned to him." If the cash paid by Gonsoulin was not paid in "current money," as stated in the deed, the defendant should have made some attempt to have the voucher produced, to show who collected the cash.

We are constrained to conclude, from the evidence before us, that the defendant's memory was at fault, and that he received the $800 paid by Gonsoulin.

[5] Nor does the evidence contradict, to our satisfaction, the defendant's acknowledgment in the authentic deed that he received the mortgage note from Gonsoulin. There is an indorsement on the note which,

if in defendant's handwriting, shows that he had possession of the note as late as the 14th of January, 1909, and that he then collected the interest due to that date and half of the principal, viz.:

"Received on within note five hundred and seventy-three & 35/100 dollars. Jan. 14, 1909."

The plaintiff testified that he was familiar with the defendant's handwriting, and that the receipt indorsed on the note was in defendant's handwriting. The defendant would neither admit nor deny that the handwriting was his. He gave no further explanation of the receipt, after the plaintiff had testified to the handwriting, except to say:

"It has not been shown that it is my handwriting on that note."

We think that the defendant, being a man of prominence, might readily have found proof to contradict the plaintiff, if the latter was mistaken about the handwriting on the note. And there are other circumstances corroborating the plaintiff's statement that he did not get possession of the note until the $573.35 had been paid on it. An ex-employé of a bank, as a witness for defendant, testified that the plaintiff borrowed $100 from the bank for one month, on the 8th of May, 1909, on Gonsoulin's indorsement, and that the loan was paid on the 1st of June, that year; that plaintiff borrowed $250 on the 1st of July, 1909, on Gonsoulin's indorsement, and paid the loan on the 17th of August, that year, with part of the proceeds of a draft given by Gonsoulin to plaintiff for $503.33, dated the 16th of August, 1909. Plaintiff testified—and it is not seriously disputed—that the draft was for the balance due on the mortgage note, which bears the indorsement written and signed by plaintiff, "Received in full, this Aug. 16/09." There is no reason why the plaintiff should have collected only $503.33 from Gonsoulin on the 16th of August, 1909, except that the balance

due on the mortgage note had been reduced to that sum. It will be observed that the interest due on the 9th of January, 1909, when the $573.35 was paid, was exactly $73.33⅓. The interest due on the balance of $500 on the 16th of August, 1909, if computed for 7 months, was $23.33⅓. It appears, therefore, that the plaintiff collected, when he receipted in full for the note, $20 less than the balance shown by the receipt on the back of it. That discrepancy might be due to some minor transaction had between him and Gonsoulin; but it is certain that plaintiff received only $503.33 on the 16th of August, 1909, when he acknowledged receipt in full and surrendered the note to Gonsoulin.

The defendant introduced in evidence a draft for $150 given by Gonsoulin to plaintiff on the 9th of January, 1909. We have no satisfactory explanation of that transaction; but, as Gonsoulin testified that he thought the draft represented a partial payment on the mortgage note, and as there is no direct contradiction of the statement, we have concluded—although we have some doubt about it—that the defendant should have credit for the amount of the draft.

Our conclusion is that the plaintiff is entitled to credit for the $800 paid by Gonsoulin when the latter bought plaintiff's property from defendant, and $573.35 paid on the mortgage note, less $150.00; that is, $1,-223.35 in all. Deducting the $375.77 claimed in the defendant's reconventional demand, leaves the plaintiff entitled to judgment for $847.58, with legal interest from judicial demand.

As the case presents only questions of fact and figures, as to which an error may readily be pointed out if we are wrong in our judgment, we have concluded to reserve to defendant the right to make application for a second rehearing.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiff, H. Crawford Rose, recover of and from the defendant, Dr. Guy A. Shaw, $847.58, with interest at 5 per cent. per annum from judicial demand, that is, from the 8th of March, 1915, and all costs of this suit. The right is reserved to defendant to make application, within the legal delay, for a second rehearing.

DAWKINS, J., takes no part.