## No. 9708

### Orleans Appeal

## SENA D. FURLOW v. MAISON BLANCHE CO., LTD., ET AL., Appellants

(June 8, 1925, Opinion and Decree)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Evidence—Par. 350, 351.**

In order to succeed plaintiff must make his case reasonably certain. To make it probable is not sufficient.

2. **Louisiana Digest—Judgment—Par. 64.**

It is a legal axiom that in case of doubt and difficulty the conclusion ought to be in favor of the party who strives to avoid a loss rather than in favor of the party who seeks to secure a gain.

(Cvil Code, Art. 2315. Editor's note.)

Appeal from Civil District Court, Division "G", Hon. Sam A. LeBlanc, Judge.

This is a suit for damages for alleged personal injuries.

There was judgment by jury for plaintiff and defendant appealed.

Judgment reversed.

Thomas E. Furlow, Donelson Caffery, attorneys for plaintiff and appellee.

J. Zach Spearing, Gordon Boswell, E. R. Mabry, attorneys for defendants and appellants.

CLAIBORNE, J. The very large amount claimed in the petition and allowed by the verdict and judgment herein, and the prominence of counsel engaged, have given this case more than ordinary importance and have caused us to peruse with more than ordinary care the voluminous transcript and briefs in this case.

The plaintiff alleges that she was injured through the fault of defendants' employees. Of course, the burden of proof is upon her to establish the injury she complains of with reasonable certainty and by a preponderance of evidence. Rose vs. Shaw, 144 La. 571, 80 South. 727; C. C. 2232.

The plaintiff swears that she went into defendants' "Beauty Parlor" to have her hair shampooed; that in the process of rinsing a spray of hot water was turned upon the top of her head and burnt it; that it was very painful and caused her to cry out to the operator: "You are burning me"; that she suffered much pain and underwent a shock that affected her nervous system. She then recites all the consequences of this "burn," which cover all the latent ills that flesh is heir to: Rigors, chills, headaches, nervousness, insomnia, pain in the head as if something was being wedged through the skull, clavus, pain in the arms, legs, sides, back, muscles, loss of power of locomotion, fainting spells, spasms, contractions of limbs, fingers, convulsions, loss of sight, unable to read or concentrate her thoughts, or to play the piano, hissing of the ears, a smothering sensation and choking in the throat; disturbances of the ovarian functions and of the thyroid glands; loss of appetite; falling off; nausea and vomiting; constipation; physical exhaustion; loss of hair, and other ills dependent upon the above conditions.

Several doctors of medicine were consulted by the plaintiff and treated her at various times after the accident. Only one of them, Dr. Sarah Mayo, saw any evidence of the burns. All gave their testimony based upon what the plaintiff told them.

Mrs. Mayo saw the plaintiff the second day after the accident. On the crown of her head there was a small area, a round spot with little blisters, very painful; that was the only part that was not normal.

The doctors consulted by her were Dr. C. E. Perkins, an osteopath; Dr. Henry Daspit, specialist in nervous and mental diseases; Dr. Miss Aldea Maher, who has specialized as a pathologist and in basal metabolism; Dr. J. E. Landry, who has made a special study of endocrinology, or internal secretions or glands, and gave it as his opinion that the plaintiff was suffering from "insufficiency of internal gland secretions."

Doctors Gerdine and Logan of the Still Hildreth Sanitarium of Macon, Missouri.

None of these doctors ever saw any evidence of a burn or a scar upon plaintiff's head. Their testimony is based entirely upon what the plaintiff told them. They are examined and cross-examined with much ability, and answer with much erudition. As a necessary consequence, they indulge in much supposition, opinion, speculation, and theory based upon a burn, as described by plaintiff, and give it as their opinion that all the ills discovered and treated by their several systems might possibly result from boiling water being poured upon one's head. But all these opinions are theories and based upon the assumption that boiling water was sprayed upon plaintiff's head and scalded it.

All agreed that the plaintiff was suffering from neurosis, or hysteria, which is a mental disorder.

Counsel for the plaintiff have examined these medical experts with much learning and research and have presented the case in argument with remarkable ability. But they have dwelt rather upon the latent physical or mental troubles of which the plaintiff complained, and upon the opinions of doctors concerning these troubles, than upon the cause of those troubles for which alone the defendants are liable.

After a patient and careful reading of the whole record, and more particularly upon that part of it, I have been unable to bring my mind to the conviction that the preponderance of the evidence establishes that the plaintiff suffered a burn of that sufficient intensity which plaintiff describes or sufficient enough to produce all those direful consequences which she so eloquently describes.

No one was present when the burn was alleged to have been inflicted except the operator, Miss Malone, and she denied it. The plaintiff made no complaint of any burn to the manager or to any one in the establishment except some three weeks thereafter; at that time she was laying the foundation for a damage suit, and upon the advice of her counsel, accompanied by a friend, she called at the Beauty Parlor and told defendant's manager of her injuries and asked him what he was going to do about it. But a year had nearly elapsed before she actually filed this suit.

The hands of defendant's operator were not affected. It would seem to follow that if the water that fell upon plaintiff's head was hot it would also have scalded the hands of the manipulator. It was stranger that this boiling water should have scalded only a "small area" the size of a "silver dollar." The water was not confined to that small area; it must have spread over all the head, and doing so, if it was hot, it must have burnt a large area, if not the whole head, which it did not do.

The spray was three inches in diameter, and yet the burn was only two and one-half inches.

The part of the scalp scalded was not one blister but "several small blisters" and the evidence is that plaintiff had blisters of a similar kind upon her back and that those were caused by "herpes" which is a cutaneous affection.

Defendant's operator acquired her knowledge of her business at a school, and after she graduated she was employed at the St. Charles Hotel as manager for three years, and had been at work at the Maison Blanche for one year prior to the accident, and at the time she testified was in the service of the Holmes Company. She never burnt any customer, and such a thing never happened before.

While plaintiff's medical experts say that the ills the plaintiff suffers from might originate from the burn, Dr. R. M. Van Wart, an authority on nervous and mental diseases, testifies that "there cannot be such a thing as traumatic hysteria where the trauma is on the head, no more than there can be from trauma to the foot, the same mechanism takes place." Scalding water upon a person's head would produce local pain and disappearance in a few days' time. "I don't see any reason why a scald on the head should be any worse than a scald on the hand."

While the plaintiff testifies that her sight has been affected, Dr. Van Wart says that she told him "she had no glasses and that she never needed them."

While plaintiff paints such a picture of her wretched health, she appears upon the witness stand in her own behalf for several hours and stands an examination of sixty-one pages, entertaining and answering abstruse questions with a clear mind and unerring precision.

In order to succeed plaintiff must make his case reasonably certain. 3 La. Dig., p. 261.

To make it probable is not sufficient. 13 Orl. App. 41, 1 H. D. 524, L. D. 245; Walton vs. Grant, 2 Martin N. S. 494; Foley

vs. Harrison, 5 La. Ann. 91; Mummy L. & Co. vs. Haggerty, 15 La. Ann. 268; Kearney, Blois & Co. vs. Arthur Hauche, 18 La. Ann. 116; E. Carver & Co. vs. W. H. Harris, 19 La. Ann. 121; Jackson & Anderson vs. F. Beling, 22 La. Ann. 378; William J. Beirne vs. James Gill, 34 La. Ann. 7; Lazarus vs. Newman, 52 La. Ann. 1967, 2015, 28 South. 331; Rose vs. Shaw, 144 La. 571, 80 South. 727.

It is a legal axiom that in case of doubt and difficulty the conclusion ought to be in favor of the party who strives to avoid a loss (qui certat de damno vitando), rather than in favor of the party who seeks to secure a gain (qui certat de lucro captando). Bronough vs. Neal, 1 Rob. 23 (24); Therit vs. Chaudoir, 17 La. 445.

In appreciating the testimony in this case the language used in 2nd Evans Pothier on Obligations, p. 198, well expresses the condition of our mind:

"In questions therefore respecting the credit of a witness the want of assent is not founded upon an assurance that his testimony is false, but from the want of an adequate assurance that it is true."

The law makes it the duty of appellate courts to reverse the verdict of juries as well as the judgments of courts when they believe that they are not supported by the law and the evidence.

Chisolm vs. Rappolo, No. 9656 of this court; 1 La. Dig., p. 894, 597, S. 630; Von Eye vs. Byrnes, 124 La. 769, 50 South. 708; 9 Orl. App. 3.

It is therefore ordered that the verdict of the jury and the judgment herein be reversed and set aside, and it is now ordered that there be judgment in favor of the defendants rejecting plaintiff's demand at her cost in both courts.