DUNN, Appellant, v. RIGAUD

---

(March 29, 1926. Opinion and Decree.)

*(Syllabus by the Court.)*

1. **Louisiana Digest — Appeal — Par. 625—Master and Servant—Par. 160(l).**

The judgment of the trial court will be affirmed unless it appears manifestly erroneous.

Appeal from Civil District Court, Division "D", Hon. Porter Parker, Judge.

Action by Robert Dunn against Jules Rigaud for compensation under the Workmen's Compensation Act No. 20 of 1914.

There was judgment for defendant, and plaintiff appealed.

Judgment affirmed.

Lazarus, Weil and Lazarus, of New Orleans, attorneys for plaintiff, appellant.

Bernard Titche, Jr., of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. This is a suit under the Employers' Liability Act.

Plaintiff alleged that about August 16, 1923, he was employed by Jules Rigaud as a plasterer's helper, which is a hazardous occupation, in the repair of a building at Breaux Bridge; that while engaged in his work he fell from a "stairway" which he was climbing with buckets of mortar in his hands; that in falling "from said ladder" he struck his head, which caused him to become partially paralyzed, and also struck his shoulder, fracturing it; that at the time of the accident he was earning $45 a week. He prays for judgment for $27 a week for 300 weeks and for $150 medical services.

Defendant admitted that he had a contract to repair a building at Breaux Bridge, but denied all the other allegations of the petition.

There was judgment for defendant, and plaintiff has appealed.

The plaintiff contends, as he alleges, that he fell down the steps within the building and thus was hurt. The defendant, on the contrary, argues that the testimony shows that plaintiff fell in the street at some considerable distance from the building and received the wound he complains of.

. The sole question therefore is one of fact: Did the plaintiff fall within the building or. did he fall in the street? If the latter, the judgment appealed from is correct.

The plaintiff testified that he was 54 years old; that by occupation he was a mortar-mixer and hod-carrier; that on August 16 he was in the employ of the defendant in Breaux Bridge mixing mortar and carrying it up to the second floor, where his employer was plastering rooms; he started work at 7 in the morning; at 10 minutes to 12 o'clock he was carrying two buckets of mortar up the stairway to the two plasterers working on the third floor; as the buckets were heavy, they caused him to lose his balance, and near the second floor he fell backward and rolled down the steps upon the mortar box upon the basement and "knocked a hole into his head"; he bled profusely and his face was covered with blood, which blinded his eyes; when he recovered his senses he "commenced" to find a doctor and went in search of a drug store to stop the bleeding; on his way he stepped down in a ditch and fell again; he could not see, his face was so full of blood; two men picked him up, a policeman and a doctor; he told them that he fell in the building, that he was going to the drug store to get something to stop the blood; that he fell against the mortar box in the building; the buckets rolled down with him and the mortar in them spilled out; he bled at the foot of the stairway; he did not get to the drug store; he cannot be mistaken about that.

There was no other witness to the alleged fall down the stairs.

The only other witness for the plaintiff was Dr. Alvin J. Smith, who saw him in New Orleans 36 hours after the accident.

He knew nothing of the details of it, except what plaintiff told him, which, of course, was inadmissible.

Defendant introduced the following witnesses:

First: L. M. Pellerin, druggist at Breaux Bridge, was at his drug store at about 12:30 on August 16, 1923; he sold the plaintiff aspirin tablets at that time; the plaintiff did not show any cut over his eye or on his face; there was no blood on his face or on his clothes; saw him leave the store to recross the street.

Second: Clerfet Patin, a butcher, at 12:30 p. m. on August 16th, was on his wagon, corner of Bridge and Main Streets; he saw Robert Dunn walking across the street; he began staggering and fell on his face; when he first saw him he had no cut on his face nor any blood on his face or clothing.

Third: Brognier Guidroz, Town Marshal, was standing in front of L. M. Perlerini's Drug Store; he saw Robert Dunn leave Perlerini's drug store; he had neither cut nor blood upon his face or upon his clothes; he saw Dunn attempt to cross the street; whilst in the middle of the crossing he stumbled and began falling, and fell on the cement walk in front of Dupuy's store.

Fourth: Dr. D. J. Gragon, physician and surgeon at Breaux Bridge; graduate of Tulane University; was called upon to treat plaintiff at Breaux Bridge; found him on August 16, 1923, at 12:30 p. m., at the corner of Main and Bridge Streets; diagnosed his case as cerebral embolism; made a written report of the case to Lionel Favrot of New Orleans as follows: Paralysis of one side, a cut on forehead over left eye, with blood flowing from cut onto walk and no blood on clothes; the place

where he fell was one and one-half blocks from Convent Building; there was no trail of blood; there being no blood on his white jumper and plenty on cement walk shows he bled only after falling; the drug store was across the opposite corner; neither the fall nor the cut on plaintiff could have produced the paralysis; after he treated Dunn on the street he was taken to Joe Martin's home, where the doctor saw him again at about 6 p. m. of the same day; quoting the doctor: "He (plaintiff) told me that he was feeling dizzy and had gone to Mr. L. M. Pellerin's drug store for some medicine, and whilst crossing the corner he lost control of his legs and fell on edge of cement walk."

Fifth: Walter Hall was a plasterer; he was working for Jules Rigaud, the defendant, on August 16, 1923, at Breaux Bridge at the Convent on the second floor; Joe Rigaud and Robert Dunn were there also; Dunn was mixing cement and carrying it up stairs in buckets; the stairs were about ten feet from the place where he was working; at about 12, witness asked Dunn: "Is that the last bucket?" And he said: "That's all for 12," and he went off; he heard no noise of any one falling down the steps; the buckets were of galvanized iron; he walked down the steps into the mixing room; he saw no evidence of mortar buckets or mortar spilled upon the steps, nor blood near the mortar box; the buckets were in order, and empty, ready for 1 o'clock; witness went with another man and picked up Dunn on the street, right across from the drug store, two blocks from the convent; saw no blood on his clothes. In the evening plaintiff told him: "I was feeling dizzy and I was trying to make it to the drug store"; the mixing box at the convent was about ten feet from the bottom of the steps; there was a hall about ten feet wide between the stairway and the mixing room; the buckets were standing alongside of one another, and his hod and shovel were clean.

Sixth: Joseph Rigaud, 15 years old, son of defendant, says he was working about five feet from the stairs; he saw Dunn going down stairs; he followed him for about five flights; he did not see him slip, nor did he hear any noise; he knocked off at 12 and went down the stairs and saw no evidence of mortar spilled; he saw the plaintiff on the pavement across the drug store; they all picked him up and brought him to the boarding house.

We think the testimony of these six witnesses is sufficient, if not to destroy the unsupported testimony of the plaintiff, at least to deprive his testimony of that degree of certainty required to entitle him to judgment.

As we said in the case of Furlow vs. Maison Blanche, 2 La. App. 351 (354), quoting:

"In questions, therefore, respecting the credit of a witness, the want of assent is not founded upon an assurance that his testimony is false, but from the want of an adequate assurance that it is true."

We believe the judgment appealed from is correct, and it is therefore affirmed.