WRIGHT v. PETTY

(October 3, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Evidence—Par. 342.**

Where circumstantial evidence is not conclusive but leaves no other hypothesis it will be considered sufficient.

2. **Louisiana Digest—Evidence—Par. 351.**

Proof beyond a reasonable doubt is not required in civil cases; a preponderance of evidence determines issues of fact.

3. **Louisiana Digest—Evidence—Par. 337, 340, 351.**

Physical facts will not under all circumstances outweigh the testimony of a number of witnesses to the contrary.

4. **Louisiana Digest—Parent and Child—Par. 12.**

Where a boy is shot upon the street by another boy, the father of the boy who did the shooting will be liable for the injury inflicted upon the boy who was shot.

Appeal from Civil District Court, Division "A". Hon. Hugh C. Cage, Judge.

Action by Walter W. Wright, etc., against A. T. Petty.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

John D. Nix, Jr., of New Orleans, attorney for plaintiff, appellant.

Alexis Brian, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. The circumstantial evidence in this case is so strong that it compels me to the irresistible conclusion that it was a shot fired by Howard Petty from a rifle in his hands that struck Charles D. Wright in the eye, and that, therefore, Charles D. Wright is entitled to a judgment against Howard Petty's father, A. T. Petty, the defendant in this case.

The facts are short and simple. Howard Petty, 14 years of age, held in his hands an air rifle loaded bith B.B. shots, and stood on the lower side of Eleonore street near the river side corner of Prytania street; near him was a boy, Frank Young, 9 years old; Frank borrowed the rifle and fired one shot at a post across the street; Howard then took back his rifle and said to Frank: "Watch me hit the other post," and he aimed at a post upon the same side of the street upon which he stood driven some feet nearer the river upon the sidewalk near the street, and fired; just then a boy, Charles Wright, upon a bicycle running along Eleonore street, between Perrier and Prytania, in the direction of St. Charles, uttered a scream, and raising his hands from his wheel to his eyes, fell to the ground; his right eye had been violently struck by some hard substance and painfully injured. He was helped to his feet by a girl companion, Julia Harrell, 14 years old, and taken to the home of an oculist, Young. Charles Wright is the main plaintiff in this case. He sues the father of Howard, charging him with having fired the shot that struck his eye. Who else could have hurled that missile that struck plaintiff's eye? There was no other rifle in that block or near there, nor was there anyone throwing stones, nor were there any stones on that street. Eleonore street is paved with asphalt from Coliseum to St. Charles. Perrier street is graveled, but it does not appear that any gravel was thrown from that street to Eleonore. Charles had come down into Eleonore street with other bicycle riders of his own age or younger, but they had come down Coliseum street and not Perrier. Besides Charles was hurt after he had passed Perrier street, and he and his companions were driving out St. Charles street turning their backs to Coliseum street and not likely to receive a gravel in the eye from that direction. It is also likely that the gravel would have been found at the place of the accident, but none was seen. The only defense is that the rifle fired by Howard carried, or sent a B.B. shot, only one hundred and twenty feet, while Charles was further off from Howard at the time he fired.

The test of the carrying capacity of Howard's rifle was made in the water in the lakes at Audubon Park calculating the distance from the muzzle of the rifle to the spot where the shot fell. But Howard fired in a street, and his shot fell, not into water in which it immediately sank, but upon an asphalt pavement where it bounded off and speeded further.

But even the distance between Howard when he fired and Charles when he was struck is left in doubt; the only witnesses to that fact are four children: Howard the defendant, 14 years of age; Julia Harrell, a companion of Howard's, who was "coming to court on every occasion with Howard and Mr. Petty," Frank Young, 9 years of age, Tommy Lewis, and Byron Edwards, 8 years of age.

Their testimony is conflicting, and not reliable.

They each differ on the question of distances. Mrs. W. W. Wright testified as follows:

"Q. Mrs. Wright, will you please tell the court whether Miss Harrell told you who shot Charles?

"A. She did. She said that Howard Petty shot Charles, and her sister said she might get into trouble by telling Mrs. Wright that; she told me it might have been accidental, but she told me that Howard Petty shot Charles Wright."

Miss Harrell denies the statement. It remains a question of credibility.

This case is not without a precedent. In the case of Simmons vs. Southern Rifle Club, 52 La. Ann. 1114, 27 So. 656, the members of the defendant club had been practicing rifle shooting. A child was wounded. The court said:

"Where the evidence excludes every other reasonable hypothesis than that the ball which struck the person injured was fired from the club grounds, by members or guests engaged in target practice, such person is entitled to recover from the club.

"Where evidence is not conclusive but leaves no other hypothesis, it will be considered sufficient." 10 Orl. App. 284; 13 Orl. App. 374; No. 7784 id.; 1 Starke 434.

"While it does not follow because a fire occurs after an engine has passed, that the one happening is necessarily the consequence of the other, yet, where a fire occurs the ignition of which is explicable by the proximity of an engine, capable, through negligence of emitting sparks and cinders, and upon no other theory which finds any support in the facts, it is unnecessary, in order to entitle the owner of the burned property to recover that he should have followed the sparks or cinders from the engine to the property and watched the progress of ignition." Castille vs. Cormier, 144 La. 640, 81 So. 210; Rousseau vs. T. and P. R. R., 4 La. App. 697; Buechner vs. City of New Orleans, 112 La. 603, 36 So. 603.

"It is laid down as a rule that evidence:
"1st. That the fire started up immediately or very soon after the passing of the train;
"2nd. That there was no fire on the premises or vicinity of the premises before; and
"3rd. That there was no apparent cause for the fire, is sufficient to warrant an inference of fact that the fire was emitted

from the railway company's passing engine." Lemann Co. vs. Texas & Pac. Ry. Co., 128 La. 1089, 55 So. 684; Tortorice vs. Yazoo & M. V. R. Co., 142 La. 232-233, 76 So. 620; Thomason vs. Kansas City Southern R. Co., 122 La. 995, 48 So. 432; Brady vs. Jay, 111 La. 1074, 36 So. 132; Meyer vs. Vicksburg, S. & P. R. Co., 41 La. Ann. 640, 6 So. 218; 91 U. S. 471; 23 C. J. 48 S. 1792; 3 N. S. 142; 10 Orl. App. 284; Rousseau vs. T. & P. Ry. Co., et al., 4 La. App. 697; 13 Orl. App. 374.

There was an attempt made in those cases also to prove that the sparks could not go to a distance of 50 to 150 feet from the smokestack where the buildings burnt were situated, and that the spark arresters were in perfect condition.

Plaintiff need not make his case certain; all that the law requires of him is "to prove his claim with reasonable certainty and by preponderance of the evidence". Rose vs. Shaw, 144 La. 571, 80 So. 727; 23 C. J. 12 S. 1745.

Proof beyond a reasonable doubt is not required in civil cases; preponderance of evidence justifies a judgment.

"The plaintiffs have substantially met the burden of proof, which was upon them to show the loss sustained, making their case fairly certain; they are not to be defeated simply because there remains room for doubt, even reasonable doubt; a preponderance of evidence determines issues of fact in civil cases." Dunn vs. Springfield Fire & Ins. Co., 109 La. 521, 33 So. 585; Rose vs. Shaw, 144 La. 571, 80 So. 727; 23 C. J. 12 S. 1745.

"Physical facts of the nature of those pleaded by plaintiff shown in part by testimony will not, under the rules of evidence, outweigh the testimony of a number of witnesses to the contrary of the theory upon these physical facts." McMichael vs. I. C. R. R. Co., 110 La. 19, 34 So. 110.

For these reasons, we think the judgment should be reversed and that there should be judgment in favor of plaintiff for substantial damages.

Dr. M. M. Meyer for plaintiff testified that he treated the plaintiff from December 28th to March 8th, a period of three months; his vision at present was not affected with glasses; without glasses it was; it required glasses to bring it to the vision of the other eye; he could not say whether he would have to wear glasses all his life, although there is a permanent change which will last as long as he lives; the tear in the curtain of the eye is there and will always remain; a wound in the curtain of the eye is always a cause of much pain; an eye that has been injured is never as good as one that is uninjured; his charges for professional services were $150.

Dr. Z. T. Young for the defendant said the plaintiff came to his house immediately after the accident; he did not make any examination then, but told the boy to keep his eye covered and to go home and get his parents' permission to treat him; the next time he saw him was on March 28th when he examined him; the right eye was injured; his vision in that eye was 20-30 plus 3 and on the left eye a little better 20-20; he was wearing glasses to correct his vision "plus 75 sphere on both eyes", the same on both eyes which give him a normal vision 20-20; he had a little rip or detachment of the iris in the lower intersector in the structure known as the lumbus which is the junction of the spera and cornea; "an expert would notice the little separation but as far as his vision is concerned I cannot see that it has affected his vision"; assuming that the boy had an error of refraction before the injury, he has not been damaged as far as his vision is concerned; the eye is not normal as before the accident; he has a five per cent off vision; there is evidence of the separation of the iris fibre and there is also distortion of that pupil;

when the iris has been punctured, the ends do not heal but remain open; the fibres of the eye are torn and are completely separated and that leaves an aperture; there is a necessity for the boy to wear glasses; the treatment given was of the highest order and the results were excellent; if the boy had the left eye covered he would not see as well with his right eye; he sees five per cent out of the right eye.

The injured boy testified that when his eye was stung "it hurt like the devil" and he "fell on the curb"; he never suffered with his eyes before; he went back to school four months afterwards; during that time he went to Doctor Meyer's every day; he cannot see out of that eye now as he used to see.

We conclude from the foregoing that the plaintiff was painfully injured, that his eye was damaged, his vision affected to a certain extent, and that he will be under the necessity of wearing glasses for an indefinite period of time.

On the authority of Marionneaux vs. Brugier, 35 La. Ann. 13; Mullins vs. Blaise, 37 La. Ann. 92, and Sutton vs. Champagne, 141 La. 469, we hold the defendant liable in damages in the sum of one thousand and fifty dollars.

It is therefore ordered that the judgment herein be reversed and set aside and it is now ordered that the defendant, Albert Tracey Petty, be condemned to pay to the plaintiff, Walter W. Wright, individually, the sum of one hundred and fifty dollars, and to said plaintiff, for the use and benefit of his minor son, Charles D. Wright, the further sum of nine hundred dollars, with five per cent per annum interest upon both sums from February 19th, 1925, till paid, and all costs of this suit,

the whole subject to the conditions required by Article C. C. 3350.

---

I agree with the trial judge in his reason for judgment to the effect that the proof establishes that the rifle was incapable of carrying the distance which separated the children at the time of the accident (as that distance is fixed by the preponderance of the evidence), and I therefore respectfully dissent.

W. CATESBY JONES.