## JOYNES v. TOYE BROS. AUTO & TAXICAB CO., INC.

—

(August 13, 1928. Opinion and Decree.)
(October 15, 1928. Rehearing Refused.)

——

Henry W. Robinson, of New Orleans, attorney for plaintiff, appellee.

David Sessler and Gordon Boswell, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J. This is a damage suit for physical injury.

The plaintiff alleged that on July 17, 1926, at 1:30 p. m., plaintiff and her husband were standing on the downtown lake side corner of Poydras and Baronne streets preparing to cross Baronne street on the downtown side of Poydras street going towards the river, waiting for the up

traffic to pass in accordance with the traffic light signals; that when the red light signals flashed across Baronne street as a signal to vehicular traffic on that street to stop, and when the green light flashed across Poydras street as a signal to traffic on that street to move along the traffic officer beckoned to plaintiff to cross; that she started to cross Baronne street, and had proceeded a foot or two beyond the middle of the roadway, when a yellow cab of the defendant company, which had been driving up Baronne street, dashed up and into the Poydras street intersection; when the chauffeur realized that he had violated the traffic law by attempting to cross the intersection after the red light or stop signal had been flashed, he backed down the Baronne street intersection of Poydras street at a violent rate of speed without giving any signal, and struck plaintiff and knocked her down; that she was struck in the right hip and the head; that the blow bruised her body, arms and legs, and dislocated one of the vertebral joints at the lower end of the spinal column, causing her much pain; that she was taken for a day to the Charity Hospital, thence removed to the Baptist Hospital, where she continued unconscious for more than a day, and where she was still confined as a patient; that she still suffers from spells of nausea after every meal, and is in a condition of extreme nervousness— for all of which she claims $20,000 damages.

The defendant denied each and every allegation of plaintiff's petition.

In a supplemental answer the defendants alleged:

"That at the time alleged, namely, on or about July 17, 1926, its Yellow Cab No. 147, operated by its employee, in the scope of his employment, was proceeding up Baronne street, on the right hand side of said street, in a proper manner and at a reasonable and moderate speed; and so driven, approached its intersection with Poydras street, whereupon respondent's said driver noted that the traffic signal, namely, a hand manipulated semaphore located on the down town river corner of the intersection, showed green or the 'go' signal for him to continue on up Baronne street and across Poydras street.

"2. That no pedestrians were then crossing Baronne street at the lower or down-town side of Poydras street and he proceeded onward as aforesaid and into the intersection, and had almost crossed over the intersection when a police officer stationed at and handling control of the aforementioned semaphore suddenly yelled to the driver to stop his cab.

"3. That in response to this peremptory order of the officer, the driver immediately applied the brakes and the cab forthwith stopped with the loud screaking of the brakes usual to the sudden stopping of a taxicab.

"4. That the driver turned his head to the left and looked at the officer, who was gesticulating with one hand and pointing to the semaphore with the other, and that the driver saw that the semaphore had been turned to red, or stop signal, after he had entered the intersection and was proceeding across street, or coincident with his having done so.

"5. That this said change of the semaphore had been suddenly made without any signal by bell, whistle, or otherwise, and without the usual and customary interval between the signal of the intention to turn the semaphore and the actual turning of the semaphore.

"6. That after the cab was stopped, as aforementioned, in response to the orders of the police officer, the said officer did peremptorily order and command the driver to reverse his course, namely, back across the intersection; and in obedience to the said order and command of the officer, the driver did forthwith back his cab along the course and in the manner that the said officer did designate and order.

"7. That the driver did so back his cab in a careful and prudent manner and at a slow speed, all in accordance with the order and signals of the officer, who continued to beckon him backward; and that the driver relied on the main on the said signals, though he was also looking every moment or two as best he could, to see that no pedestrian or vehicle was in the street or about the place he was backing over.

"8. That he so backed across Poydras street, a distance of some 35 to 50 feet, during which time the officer continued to beckon and signal to him to continue; and that when the rear of his cab was at or about the downtown curb of Poydras street some one yelled to him that a lady had fallen down in the street to the rear of the cab, and he forthwith applied the brakes and brought the cab to an immediate stop.

"9. That for want of information sufficient to justify belief, respondent denies that the cab backed into or collided with the plaintiff; and says that if the cab struck plaintiff, as·is alleged in the petition, then the accident resulted from no fault of respondent's driver, who was backing and steering the cab under orders of the said officer, and in the manner he designated by and through his continuous signals; and notwithstanding that respondent's driver was also keeping a lookout, as best he could, he relied on the signals of the officer, which he had a right to do and was obliged by law to do, which said officer was in a better position to see that plaintiff and other pedestrians did not walk or stand in the course of the backing cab.

"10. That the cab was so backing in plain view and with the noise usual to a taxicab motor in reverse gear, and that had plaintiff looked and listened as a careful and prudent person would and should have done when walking across or standing in the driveway of a much traveled thoroughfare such as is Baronne street she would have heard and seen the cab, as it slowly backed towards her, in ample time to have avoided placing herself in its course, and in ample time to have gotten out of the way, all of which plaintiff failed to do, and that her failure to have looked and listened and to have avoided the accident was carelessness and fault that caused, or proximately contributed to the accident.

"11. That while the cab was backing, as aforesaid no other vehicles were crossing or preparing to cross the intersection via Poydras or Baronne streets; that there was no reason whatever for ordering or compelling the cab to back across the intersection and that in so ordering and compelling the driver to so back across the intersection the police officer acted in an unreasonable and arbitrary manner and but for his unwarranted actions and continuous signals to the driver, the accident would not have occurred."

The case was tried before a jury, who returned a verdict of $10,000 in favor of plaintiff, confirmed by a judgment.

Defendants have appealed.

Our attention is first directed to an objection to testimony made by defendant and overruled.

Thomas J. Burns, the defendant's chauffeur at the time of the accident, as a witness for defendant was asked by plaintiff's counsel:

"Q. Were you the Thomas Burns who pleaded guilty in the Criminal District Court on June 18, 1923, on the charge of gambling?"

To which question defendant's counsel objected on the ground that it was irrelevant and immaterial. Being asked the purpose of the question, plaintiff's counsel answered that it was to prove that the witness was "an improper and incompetent person to drive an automobile"; that he proposed to prove by the criminal court's record a story of utter incompetency. The trial court overruled the objection. It was understood that defendant's objection would apply to all such testimony.

The witness was then asked whether he had not been charged with loitering on divers occasions, whether he had been arrested and charged with being a dangerous and suspicious character, with disturbing the peace.

We are of the opinion that such testimony was inadmissible, inasmuch as it would not prove the witness as an "improper and incompetent" chauffeur. He might have been guilty of all those acts of omission and commission, and yet have been a skillful driver. But the questions were calculated possibly to arouse prejudice against the witness and the defendant on the part of some of the jurors unable to distinguish between relevant and irrelevant testimony.

The facts as we find them are very much as detailed in defendant's voluminous answer.

They are as follows:

The plaintiff and her husband were standing upon the sidewalk on the downtown lake side of Baronne and Poydras streets, intending to cross Baronne street; just then defendant's cab drove in front of them, running up upon the lake side of Baronne street, and entered Poydras street; when it had driven more than half of the width of Poydras street, the chauffeur realized or was told by a traffic officer, located on the downtown river corner of Baronne and Poydras, that the red light was on Baronne street and that he had disregarded it by advancing so much into Poydras street; the chauffeur then backed up into Baronne street inside of the white line on Poydras street; just then the plaintiff, who had been awaiting her opportunity, stepped into Baronne street to cross it; but she had not gotten beyond the first track towards the lake when she was struck by the backing cab, knocked down, and severely injured.

This was at 1:30 p. m.

It is evident that the accident happened through the negligence of the cab's chauffeur. Whether he was ordered by the traffic officer to back, or whether he backed up spontaneously, is immaterial. If he did either negligently he is liable. He cannot lay the blame, which at least he shared, upon the officer. No one can set up as an excuse that he was told to commit an illegal act. But it is evident that he was told to do a legal act, to drive according to ordinances; and if he did that negligently he alone was liable.

The chauffeur was seated upon the front left side of his cab. The traffic officer was upon his left side in the rear; in backing, the chauffeur kept his eyes upon the officer upon his rear left side; he did not look towards the plaintiff, who was upon his rear right side. Nor is there a pretense that the chauffeur blew his horn or gave any other sign of his backing. Three witnesses swore that he was backing very fast, one of them, a passenger in his car, a stranger from another state. It is true that three experts, employees of the defendant, testify that the cab could not back more than 3½ miles an hour. But the fact remains that the cab was backing fast and injured the plaintiff. Backing trains, or cars, or cabs, without necessary precaution, is negligence. Thornhill vs. Yellow Cab Co., 6 La. App. 789; Dill vs. Colley, 3 La. App. 308, 309.

It is as negligent to drive backward as it would be to drive with a blind chauffeur. The best evidence that the car was driven fast is that neither the plaintiff, nor the plaintiff's husband, nor the two officers standing upon either side of

the street upon the sidewalk, and another witness, had time to notify the plaintiff.

The case quoted by defendant of Shelley vs. Waguespack, 156 La. 256, 100 So. 417, is not in point; nor Folwell vs. Demack Motor Car Co., 144 La. 783, 81 So. 313; nor Biagi vs. New Amsterdam Casualty Co., 151 La. 925, 92 So. 387; nor Itzkovitch vs. Schorling, 155 La. 423, 99 So. 353.

But it is said that the plaintiff was negligent in not seeing the cab coming. We do not think so. She was standing on the corner, as we have seen, waiting for the uptown traffic to pass so that she could step upon the street to cross. The defendant's cab passed in front of her traveling upon her right. She had no reason to anticipate that the cab would reverse and back up towards her. Nor could she have been required to guard against any vehicle upon her right. Traffic was coming from the left side, and in that direction alone was she required to look. She had a right to believe that others would obey the law.

She saw nothing coming and she proceeded to cross. Had it not been for defendant, she would have crossed in safety.

But admitting that plaintiff was negligent, defendant had the last clear chance to avoid the injury, and, failing to avoid it, he is liable.

The familiar example of the farmer tying his donkey in the middle of the road solves the situation. Of course, the farmer was negligent, but the defendant who ran over and killed the donkey was liable, because by the exercise of ordinary care he might have avoided the injury. Kird vs. New Orleans & N. W. R. Co., 105 La. 229, 29 So. 729; Davies vs. Mann, 10 M. & W. 546 (1842); Meeson & Welsby, Exchequer.

There remains only the question of quantum of damages. Of course, courts must guard against the exaggeration of plaintiffs in stating their injuries, and against injuries not visible to the naked eye. Furlow vs. Maison Blanche Co., 2 La. App. 351.

The accident in this case occurred on July 17, 1926. It consisted in a dislocation of the sacroiliac joint and a separation of the hip bone, and a slight tilting of the last lumbar vertebra, and a disturbance of the right leg called ankle clonus, causing much pain. She was taken to the hospital, and the next day to the Baptist Hospital, where she remained off and on until December 25, 1926, and where she returned for consultations about every two weeks up to the date of the trial, November, 1927. She also suffered from nausea for some time, and is now very nervous. She wore a canvas brace or a plaster cast for some months extending over her hips, causing her much inconvenience. On the day of trial she walked with a stick.

There is no evidence of any expense on her part for doctors or drugs.

There has been a slow and gradual diminution of the pains. One doctor testified that the pain is going to disappear in the next few years.

Dr. C. S. Holbrook testified:
"A. I would say that she is very much improved over what she was last year.
"Q. What would you say as to the permanence of this condition?
"A. I think she will get entirely well. That is my opinion.
"Q. And how long a time will be required, in your opinion, for her to get entirely well?
"A. I should say, within some months, in six to twelve or twenty-four months, one would expect her to get well, possibly shorter, possibly longer."

In the case of Granberry vs. Jarrau, 8845 Orleans Appeal, the plaintiff suffered two bones of the right foot broken, sprained ankle, hips bruised, back wrenched, and nervous shock, $2,000, quoting numerous authorities.

In the case of Shankland vs. Morris, 4 La. App. 326, 331, the injuries which the plaintiff received were described by the doctors as a displacement of the sacroiliac joint, and of the fifth lumbar vertebra, which they all agree is a permanent injury, and that the plaintiff will suffer pain from the injury where she assumes for an unusual time a position where the weight of the trunk is upon the lower spine and hips. The plaintiff suffered much pain from the injury and had become very nervous, $2,500.

In the case of Moeller vs. Morgan's La. & Tex. R. R. & S. S. Co., 7 La. App. 559, the plaintiff suffered from a slight separation of the sacroiliac joint, a very painful back, and a seven-inch canvas belt, and was unable to do any heavy work. $700.

But the case before us is more aggravated, and we fix the damages at $5,000.

While there is no fixed standard of damages, there must be some uniformity.

Jones vs. Tremont Lumber Co., 139 La. 621, 71 So. 862; Williams vs. Lumber Co., 125 La. 1088, 52 So. 167, 136 Am. St. Rep. 365, 19 Ann. Cas. 1244; Rice vs. Crescent City R. Co., 51 La. Ann. 108, 24 So. 791; McMahon vs. N. O. R. & L. Co., 127 La. 544, 53 So. 857, 32 L. R. A. (N. S.) 346; 2 La. Dig. 824 (1910).

It is therefore ordered that the judgment herein be amended and reduced from $10,000 to $5,000, and as thus amended that it be affirmed.