326 So.2d 576 (1976)
Ronald A. PRATTINI et al.
v.
Lawrence WHORTON, Jr. and New Orleans Public Service, Inc.
No. 7164.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1976.
*577 A. R. Christovich, Sr., and A. R. Christovich, Jr., New Orleans, for Public Service, Inc., defendant-appellant.
Tonry, Mumphrey & Dragon, Richard A. Tonry, Chalmette, for plaintiffs-appellees.
Blake G. Arata, City Atty. and Wayne G. Cresap, Asst. City Atty., for defendant-appellant City of New Orleans.
Before SAMUEL, LEMMON and SCHOTT, JJ.
SCHOTT, Judge.
At about 8:00 PM on December 16, 1971, Mrs. Helen Prattini and her daughter, Rhonda, were in the family automobile stopped in a line of traffic on Canal Street, facing north just beyond the intersection with Royal Street, when their automobile was struck by a bus owned by *578 New Orleans Public Service, Inc. and operated by its employee, Lawrence Whorton, Jr. This suit was filed for damages sustained by the Prattinis in this accident.
When the bus reached Canal Street from Royal, Whorton was to make a right turn on Canal Street but was confronted by much traffic congestion in his path, including the plaintiff's automobile. The intersection was controlled by an electric semaphore signal, but there was also on duty directing traffic a policeman of the New Orleans Police Department. While Whorton was stopped, waiting for traffic to clear and the light to change, this policeman directed him to make the turn. He began to do so and after making a wide turn, utilizing the left lane of Canal Street facing the plaintiff's automobile to the right of his bus, he again stopped fearing that the bus might collide with plaintiff's automobile if he continued with his turn. Nevertheless the police officer repeatedly directed him to proceed notwithstanding Whorton's motion to the policeman that plaintiff's car was in his path. Whorton finally obeyed what he termed the policeman's "hard demand" for him to move the bus and the bus ran into plaintiff's automobile with the left rear of the automobile being struck by the right side of the bus about two feet from its front.
Plaintiffs' original petition, filed only against the bus driver and owner, had been amended to make the City of New Orleans a defendant based upon the negligence of the policeman. The trial judge awarded judgment to plaintiffs against both New Orleans Public Service and the City and both of these defendants have appealed.
Whorton saw or should have seen that plaintiffs' automobile was in his path. We know of no authority to support NOPSI's contention that it was relieved of liability for plaintiffs' damages under these circumstances because Whorton was told by the policeman to move. The cases relied upon by NOPSI, Sutton v. Travelers Ins. Co., 167 So.2d 517 (La.App. 4th Cir. 1964) and Marquis v. Hartford Accident & Indemnity Co., 40 So.2d 534 (La.App. Orl. 1949), are inapposite. Neither case involved the liability of a defendant who ran into a plaintiff who was seen or should have been seen by defendant on the excuse that he was directed to do so by the policeman. We subscribe to the following approach on this point in Joynes v. Toye Bros. Auto & Taxicab Co., 11 La.App. 124, 119 So. 446 (Orl.1928):
"It is evident that the accident happened through the negligence of the cab's chauffeur. Whether he was ordered by the traffic officer to back, or whether he backed up spontaneously, is immaterial. If he did either negligently he is liable. He cannot lay the blame, which at least he shared, upon the officer. No one can set up as an excuse that he was told to commit an illegal act. . . ."
As to the City of New Orleans, Whorton's testimony was supported by that of a disinterested witness to the effect that this policeman completely disregarded the fact that plaintiff's automobile would be struck by the bus and nevertheless insisted that the bus driver proceeded with the inevitable result that the collision occurred. To determine the City's liability we apply the cause-in-fact, duty-risk, and negligence formula of Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821.
As to cause-in-fact, we note that but for the policeman's overauthoritative and unreasonable behavior the collision would not have occurred. Plaintiff's damage was caused by a combination of Whorton's unreasonable conduct in the operation of the bus and the police officer's repeated, emphatic directions while exercising authority over motorists on city streets. In the absence of the policeman's directions Whorton apparently would not have been goaded into proceeding against his better judgment. Although the accident would not have occurred if Whorton had not acted imprudently in following directions, the policeman must be accountable to some extent *579 for the consequences. Thus, his conduct was a cause-in-fact of the accident.
As to duty-risk, the policeman occupied an official position and was under a responsibility to direct traffic. This duty required him to maintain due regard for the safety of all who would be affected by the discharge of such responsibility. An obvious risk created by a breach of this latter duty would be that damage might be caused to motorists if his directions were improperly or imprudently given. Thus, our policeman's breach of a duty created the very risk that the duty was designed to prevent, namely, injury to innocent motorists because of improper or imprudent behavior in directing traffic.
As to negligence, the policeman unreasonably exercised his authority and failed to see and consider the position of plaintiffs' automobile before he demanded that Whorton proceed in the bus. A reasonably prudent person would not have acted this way under the circumstances.
In its brief to this Court the City has devoted much argument to demonstrate the liability of Public Service but has not cited any authority which would indicate an absence of liability on its own part based upon the concurrent negligence of its employee, the policeman, with the negligence of the bus driver. Since we have concluded that the policeman was liable it follows that the City is vicariously liable along with Public Service.
Public Service has also complained that the awards of $3,000 to Mrs. Prattini for personal injury and pain and suffering and of $11,000 to Ronald Prattini, as administrator of his minor daughter Rhonda for a knee injury with attendant scars and disfigurement, pain and suffering are excessive.
On the day after the accident Mrs. Prattini was examined by Dr. Eugene J. Dabezies, an orthopedic surgeon, who diagnosed her injury to be a moderately severe acute cervical strain for which he prescribed muscle relaxants and analgesics. He further examined her on January 3, 13 and 24 and March 24, 1972. He found an absence of spasm as of January 24 but continued tenderness of the right trapezius muscle and she complained to him of headaches throughout this period. On March 27, 1973, she returned to his office with the complaint of headaches but at that time there was no spasm, no tenderness and a full range of motion. The doctor had no explanation for the headaches at this time. Mrs. Prattini testified that she suffered with neck pains for three months and headaches for more than a year and that the neck pain prevented her from performing her household duties. We find no abuse of the trial court's discretion in his award of $3,000 for these injuries.
Rhonda Prattini, 13 years of age at the time of the accident, struck her knee on the dashboard as a result of the collision. On the following day she too was examined by Dr. Dabezies who found the knee swollen and tender in an area where the girl had a pre-existing prominence of the tibial tubercle. He prescribed a mild analgesic and restricted her activities because he believed there was some hemorrhage from the bruise which might generate extra bone formation within the tendon and become quite painful. On January 3 he again examined the girl and because of her complaints of pain and tenderness he found on examination he prescribed a drug intended to retard or stop the inflamatory process in her knee, and again cautioned her to restrict her activities. When he found that she was still suffering with this problem on January 24 he continued her on medication and took her off of all athletic activity. On March 24 he found that she still had tenderness and prescribed limited use of the knee. The girl was seen by Dr. G. Gernon Brown and by Dr. Rufus H. Allredge on May 15 and August 30, 1972, respectively, and on each occasion she was found to have pain in the knee with the expectation that such pain would subside in time. Dr. Dabezies again saw Rhonda on *580 November 5, 1974, when she was still complaining of pain, particularly on kneeling when the pain was severe. X-ray examination revealed the presence of extra bone formation in the knee which prompted the doctor to recommend surgery for the removal of the extra bone. She was hospitalized for four days in December, 1974, when the surgery was accomplished. She was put on crutches until January 14, and she was left with a two inch permanent scar on the knee together with a 5% to 10% residual disability. Dr. Dabezies allowed that in the absence of a trauma the preexisting condition of Rhonda's knee could have led to the formation of the extra bony fragment in her tendon and eventual pain requiring surgical intervention, but he expressed the firm opinion that these complications were probably caused by the trauma in the accident. We cannot say that the trial judge abused his discretion in setting the award of $11,000 to Rhonda for her injury.
Accordingly, the judgment appealed from is affirmed at defendants' cost.
Affirmed.