No.  ——

First Circuit

_____

LAMPLEY
v.
STANDARD BRICK & CLAY PRODUCTS COMPANY

_____

(February 15, 1928.   Opinion and Decree.)
    (April 11, 1928.    Rehearing Refused.)
(May 7, 1928.    Writs of Certiorari and
    Review Denied by Supreme Court.)

_____

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant Par. 160 j.**
Where the evidence in a case under the Workmen's Compensation Act No. 20 of 1914 as amended does not prove with certainty or by a preponderance of evidence that mental condition of injured employee was caused by the injury, there can be no recovery of compensation under the act.

Appeal from the Parish of St. Tammany. Hon. Prentice B. Carter, Judge.

Action by Jesse Lampley against Standard Brick & Clay Products, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

S. W. Provensal, of Slidell, and C. S. Frederick, of Covington, attorneys for plaintiff, appellee.

Harvey E. Ellis and Robt. S. Ellis, Jr., of Covington, attorneys for defendant, appellant.

LECHE, J. Jesse Lampley was employed as a laborer by the Standard Brick & Clay Products Company, Inc., and while so employed was assaulted and struck by another employee of said company. Charging that the injury received by him at the hands of his fellow employee, has rendered him totally and permanently disabled to work, he prays for compensation at the rate of 65% of his weekly wage of ($15.00) fifteen dollars, for a period not to exceed (400) four hundred weeks and for medical, surgical and hospital fees, an additional sum not to exceed ($250.00) two hundred and fifty dollars.

Lampley recovered judgment as prayed for in the District Court, and defendant has appealed.

Lampley was assaulted by one Frank Wilson, who struck him with his fist, on the ear and in the face, causing Lampley to fall to his knees and to bleed profusely. After being thus assaulted Lampley proceeded to wash his face and continued to work for an hour or two and then left. Wilson had no authority over Lampley and whether Wilson was acting within the scope of his employment is irrelevant, for this is not a demand in damages under Art. 2315 of the Code, but a demand for compensation, and the injury even if inflicted by a fellow servant, arose out of and in the course of plaintiff's employment, and is compensable under the statute if it has caused disability to do work.

In his petition plaintiff charges that he was knocked unconscious, but that allegation is not borne out by the evidence. For when plaintiff left his work, he went unaccompanied by any one to the office of Dr. Singleton, his family physician, for advice and treatment. Dr. Singleton says that he treated plaintiff for a lacerated wound of the ear and contusions about the head.

Plaintiff's petition does not state the exact nature of the injury which has permanently and totally disabled him to do work of a reasonable character, it does, however, state the cause to be the assault which Wilson committed upon the plaintiff.

The evidence is abundant that plaintiff's alleged injury is not of a physical nature. Dr. Singleton, who treated him, and Dr. Heintz and Dr. Griffith who together with Dr. Singleton had plaintiff to undergo in their presence, a most careful and rigid physical examination several weeks after the assault, could find no signs of any physical injury. Dr. Singleton says that at the time of this examination, the wounds and contusions for which he had treated plaintiff had completely healed.

Plaintiff, however, continued to insist that he was not well and that he was suffering and unable to work. Dr. Singleton, then, as a super-cautionary measure, sent plaintiff to the Charity Hospital in New Orleans in order to have an x-ray picture taken of his head, and for treatment. Plaintiff reported at the hospital to Dr. Miller, one of the house surgeons, he was examined and x-ray pictures were taken of his head. Dr. Miller tried to keep plaintiff at the hospital in order to find out the cause of his trouble, but plaintiff re-

fused admission. The x-ray picture it seems disclosed no lesions, fractures or other abnormal condition of the head.

It appears from the testimony, that the particular ailment not mentioned in the petition, upon which plaintiff's demand is based, is called by Dr. F. F. Young, who conducts the "Fenwick Sanitarium" at Covington, La., Traumatic Neurosis Psychosis, a mental disease alleged to have been brought on plaintiff by the hereinbefore mentioned assault committed upon him by Wilson, on January 13, 1926, while in the employment of defendant.

There are then two questions involved in the case, first, whether plaintiff's mind is really diseased to the extent of unfitting him to do work of a reasonable character, and second, if such disease does really exist, whether such disease was brought into existence by the assault committed on plaintiff by Wilson, while plaintiff was in the employ of defendant.

Dr. F. F. Young, whose opinion is worthy of great respect, who has had many years of experience in the treatment of mental and nervous diseases, examined plaintiff and diagnosed his trouble as traumatic neurosis phychosis. Dr. Young is of the opinion that plaintiff is not mentally responsible, not physically able to do any work of a reasonable character. He is also of the opinion that this condition of plaintiff's mind was brought on by the blows inflicted upon him by Wilson in the assault of January 13, 1926.

Plaintiff also relies upon a letter of Dr. Daspit written to Dr. Griffith, in which Dr. Daspit expresses an off-hand view as to the possible condition of plaintiff, but that letter is so clearly inadmissible as evidence in the case that it should not be noticed. Dr. Daspit was not under oath and defendant had no chance to cross-examine him.

Dr. J. C. Menendez, another reputable expert on nervous and mental diseases, who also examined plaintiff, is of the opinion that the injury received by plaintiff at the hands of Wilson on January 13, 1926, had nothing to do with any mental ailment of which it is claimed that plaintiff was suffering at the time this case was tried.

Dr. C. V. Unsworth who has acquired a great reputation as a specialist and an expert on nervous and mental diseases, is most positive in expressing the opinion that plaintiff is malingering and that the alleged assault of January 13, 1926, could not have produced the mental condition of which it is complained that plaintiff is suffering.

All three of these experts were present in the courtroom during the trial of the case. They saw plaintiff, had him under observation and heard him testify. Plaintiff's answers to the questions propounded to him, were sometimes not responsive, sometimes evasive and often consisted of "I don't know." Whether such answers arose from a diseased mental condition or were given designedly, it is difficult for the layman to say. But the experts heard them, they saw plaintiff's actions, his movements and his general behavior in court and yet their testimony, given with the utmost sincerity, was substantially as above recited.

Dr. Griffith describes plaintiff as a man of very low order of mentality and both he and Dr. Singleton, though not pretending to be experts on nervous and mental diseases, did not believe that the injury received by plaintiff at the hands of Wilson, had anything to do with the ailment of which it is complained that plaintiff is suffering.

Plaintiff's condition, if not simulated, is deserving of great sympathy, but careful consideration of all the testimony, im-

presses the judicial mind as constituting a case which is not proved with certainty or even by a preponderance of evidence. For that reason the judgment appealed from should be reserved and plaintiff's demand should be rejected at his costs, and it is so ordered.

## ON APPLICATION FOR REHEARING.

MOUTON, J. Urged by a very earnest application for a rehearing in the above matter, we have again considered all the evidence of the physicians and experts who testified in the case. The question involved is one of fact and the solution of it, is more properly within the domain of the medical profession. We believed when we first decided the case, that we had reached a conclusion which is supported by a preponderance of the evidence. A reconsideration of that testimony has not changed our belief in that respect.

The application for rehearing is refused.