**BAILEY v. GIFFORD SAND & GRAVEL CO.***

No. 4274.

Court of Appeal of Louisiana.   Second Circuit.

March 16, 1932.

---

*Rehearing granted May 4, 1932.

Argued before DREW, McGREGOR, and CULPEPPER, JJ.

Allen V. Hundley, of Alexandria, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

McGREGOR, J.

The plaintiff in this case was injured while in the employ of the defendant on or about December 13, 1925. Suit was brought under the Employers' Liability Law (Act No. 20 of 1914 as amended), and judgment was rendered allowing the plaintiff compensation for a period of twenty-seven weeks. The case was appealed to this court and, in a well-considered opinion by Judge Odom, the judgment of the lower court was amended so as to award compensation to the plaintiff on the basis of permanent, total disability for a period not to exceed four hundred weeks. 7 La. App. 513.

On September 17, 1931, the defendant made application for and obtained a rule directed to the plaintiff, ordering him to show cause on October 15, 1931, why the judgment rendered in his favor against the defendant should not be decreed to have been satisfied and why the defendant should not be relieved from making further payments for compensation. In connection with the issuance of this rule, an order was signed suspending all fur-

ther payments of compensation under the said judgment. This action on the part of the defendant is based on section 20 of the Workmen's Compensation Law (Act No. 20 of 1914, as amended by Act No. 85 of 1926). In its application for the rule the defendant alleged that it had recently learned that the plaintiff's disability had long since ceased and that for the past two or three years he had been regularly performing manual labor and had earned and been capable of earning as much as, or more than, he was earning at the time of his injury. It is specially alleged that at the time of the filing of the application for rule and for some time prior thereto the plaintiff had been employed as janitor in a high school at a salary of $75 per month, and that at the same time he was earning other sums by operating a truck for hire, carpenter work, and truck gardening, and other gainful activities.

In answering the application of the defendant, the plaintiff alleged that his disability was the same that it was when the original judgment was signed; that he was formerly a carpenter by trade; that at the time of filing his answer he was still completely unfitted to perform the duties of his trade and wholly incapacitated to do any work of a reasonable character. He admitted that he had been employed as school janitor for a while, but alleged that he was unable to do the work required; that while he held the job he had to use his son to help him; and that he finally had to give it up entirely because the work was too arduous. He admitted further that he was compelled to engage in numerous and various enterprises in order to make a living for his family, but that in all his efforts to work at anything he was compelled to have the assistance of others, and that none of the things which he was able to do constituted work of a reasonable character. He prayed, therefore, that the rule issued at the instance of the defendant be recalled and discharged at its cost, and that the order suspending payments under the original judgment be annulled, vacated, and set aside.

Upon trial in the lower court there was judgment in favor of the plaintiff in rule, discharging it from making any further payments of compensation under the original judgment, and decreeing that the said judgment had been satisfied and paid in full. From this judgment the plaintiff has appealed.

### Opinion.

It is the contention of the defendant that the plaintiff, Harvey C. Bailey, has, since the final judgment was rendered in the case, improved in his physical and mental condition to such an extent that he can perform any reasonable manual labor. It is its further

contention that if it should be held that he has not fully recovered from his judicially determined permanent, total disability, his incapacity for labor has at least been removed to such an extent that it is only partial, and that the judgment of the lower court is right for the reason that compensation has already been paid for as many as three hundred weeks, the maximum length of time during which the law provides for compensation for permanent total disability.

At the trial of the case several witnesses were sworn for the purpose of showing that the plaintiff had recovered from his disability. In the application for the rule to show cause it is particularly alleged that plaintiff was then, and for some time had been, employed as janitor in the High School at Forest Hill, at a monthly wage of $75. To establish this allegation at the trial on November 10, 1931, W. S. Campbell, the principal of the high school, was sworn as a witness. He testified that Bailey was first employed as janitor on February 1, 1931, and served the rest of the term, and then "looked after the grounds during the summer until about two weeks before school opened." The duties required of a janitor such as plaintiff were to sweep the building and to fire a furnace during cold weather for steam heat. On his direct examination this witness stated that plaintiff's son was always with him, helping him every day. In explaining when and why the plaintiff gave up the work, Campbell said:

*"Well, he didn't start in working there like I wanted. He was lazy in his work. He didn't seem to have the interest he first had,* and I mentioned to him that we would have to include in his work the care of the new gymnasium, auditorium we had just built, and he said he wanted to tell me *it was too much, more than he could do,* but he hadn't mentioned it to me, and I told him we would be forced to have some one to take care of the buildings, that if he couldn't do it, or wouldn't do it, we would have to get another." (Italics ours.)

With reference to his service as janitor, the plaintiff was sworn as a witness in his own behalf, and he testified that he was not able to do this work by himself, but that he was compelled to have the help of his young son. He is corroborated in this statement by his son and others. About two weeks before the beginning of the session of 1931–32, Mr. Campbell notified the plaintiff that he would have more work to do because of a new building having been added to the school plant, and he resigned for the reason that, even with the help of his son, he could not do the work.

■ The letter requesting the plaintiff to report to defendant's physician for the purpose of an examination to ascertain the present state of his physical condition was written on August 28, 1931, and counsel for defendant advanced the theory that it was the receipt of this letter that caused the plaintiff to resign his job as janitor. Plaintiff testifies that he had already quit the job before he received the letter, and in the absence of testimony to the contrary, we are bound to accept the statement as true.

Fred Wiggins, who succeeded the plaintiff as janitor, testified that plaintiff owned what he termed "a little one-horse farm," and that he (Wiggins) helped him raise truck on it, and that plaintiff hoed and plowed and worked there at spare times. He also testified that he had known him to do some carpenter work, as well as hauling with a truck.

Lyman H. Mizell was placed on the stand as a witness to prove that the plaintiff was capable of doing work of a reasonable character, and he stated that he knew of his work as janitor and that he himself had given him a contract or two to do some carpenter work; but even on his direct examination, when asked whether the plaintiff had satisfactorily done the work, he said:

"Well, he is not reliable mentally. I don't think he completed one of the jobs according to agreement. The other one he started and did part of the work and just quit; didn't complete the contract, so I had to hire someone else to do the balance of the work."

On his cross-examination this Mr. Mizell stated that he had not known the plaintiff to do any work that amounted to anything and that he always had help at whatever he did.

Mr. J. W. Mizell was also a witness for the defendant and his testimony was practically the same as that of Lyman H. Mizell.

W. S. Savage, another witness for the defendant, also testified favorably for the plaintiff. On cross-examination he said:

"Q. Now, do you know whether his work has been in the nature of sustained effort or whether it has been more or less of what we call a piddling nature? A. I think Mr. Bailey tries to work regularly if he can, but he just can't.

"Q. Does he accomplish regular work? A. Well, I wouldn't say that he could."

■ Dr. P. K. Rand, a physician and surgeon with wide experience in X-ray work, made two physical examinations of the plaintiff shortly before the trial of the rule and testified as a witness for the defendant. It will be remembered that plaintiff's injury in the beginning was a hole in the head, on the left side near the temple, which was made by his falling on a sharp piece of iron which penetrated into the brain, causing some of the brain tissue to escape through to the outside. It is the gist of Dr. Rand's testimony that the point of the injury is the least dangerous portion of the head to be penetrated, and that an injury at that point is less calculated to leave permanent results.

In fact, he stated that he did not expect to find any motor or mental disturbance at all from a puncture in that location. It was his opinion that the plaintiff was perfectly normal and was suffering from no disability at the time of the trial. The testimony of Dr. Rand was practically the same as was given by physicians for the defendant on the original trial, and if his testimony is correct, then the original opinion of this court is wrong. That is a matter, however, that is res judicata, and we have no right or authority to examine into its correctness, even though we should desire to do so.

Dr. R. E. McGill, who also examined the plaintiff, testified in his behalf at the trial of the rule. Without going into the details of his testimony, it is his opinion that the plaintiff possesses neither the mentality nor the physical endurance to do work of a reasonable character for any length of time. His opinion is corroborated by actual facts. Before his injury plaintiff was a carpenter, depending on his trade for a living. Since that time he has never been able to follow his trade with any degree of satisfaction. There was an attempt made to show that he had done considerable carpenter work, but the very witness by whom it was sought to prove this fact testified that he never completed a job satisfactorily. An effort was made to show that he owned and operated trucks and did hauling of various kinds, but it developed that he did this with hired help. The only job that he ever held, according to the testimony, by which he made any considerable sum of money, was that of janitor for the high school, and he proved conclusively that he could not have done this work alone and, as a matter of fact, quit it because he could not hold out any longer.

In support of its demand the defendant has cited several authorities for our consideration.

■ Lampley v. Standard Brick & Clay Products Co., 8 La. App. 300. This is not the kind of case that should be cited here. It is not a case brought under section 20 of the act, but is a case wherein the plaintiff's injuries were passed upon and determined for the purpose of finding out whether he was entitled to compensation at all. After it has once been determined that one is entitled to compensation and subsequently the defendant seeks to have the matter reopened under section 20 of the act, the burden of proof is upon the defendant to establish that the plaintiff's condition has improved sufficiently to justify the Court in granting the relief sought.

The case of Rogers v. Thermatomic Carbon Co., 157 La. 193, 102 So. 304, is cited in support of defendant's contention that:

"Under section 20 of Act 85 of 1926, a judgment awarding compensation can be either modified so as to reduce the amount of compensation on the ground of decrease of disability of the employee, or modified so as to discharge the employer from further liability."

No citation of authority is needed in support of this proposition. It is a plain provision of the law. In the case cited the defendant proceeded by rule against the plaintiff for the purpose of having it decreed that the compensation ordered to be paid by said judgment under the terms of the judgment, itself, and under the law, had ceased to be due for the alleged reason that the plaintiff was no longer totally disabled or disabled at all. On trial in the district court judgment was rendered reducing the compensation. On appeal to the Court of Appeal, the case was dismissed as of nonsuit. The case was taken to the Supreme Court by writ of certiorari, and the judgment of the Court of Appeal was affirmed, so that case cannot by any process of reasoning be made to sustain the position of the defendant herein.

Lasyone v. Grant Timber & Manf. Co. of La., 2 La. App. 522. This is a case wherein the plaintiff is seeking in the first instance to secure compensation on the basis of permanent, total disability for four hundred weeks. On trial in the lower court the plaintiff's demands were rejected. On appeal to this court it was found that the plaintiff was suffering from partial disability, but that as he was making as much after his injury as he was before, it was held that judgment for no amount could be rendered in his favor. Section 20 of the act is not involved. It is true that plaintiff sought to avail himself of the provisions of that section by filing a motion in this court to return the case to the lower court for the purpose of taking testimony as to his condition, which he claimed had become worse since the trial in the lower court. This court, with Judge Carver as the writer of the opinion, very correctly held that that section did not apply in such a case. So we find that there is no authority or reasoning in this citation to support the defendant in his efforts to have plaintiff's judgment against it discharged.

The next case cited by the defendant is that of Stewart v. Fitzgerald Plumbing & Heating Co., 4 La. App. 511. In this case it was satisfactorily proved that the plaintiff was able to earn at the time of the trial, and had been for some time prior thereto earning, the sum of $35 per week as opposed to $55 per week which he was earning at the time of the injury. This court reduced the plaintiff's judgment to the basis of 60 per cent. of the difference between the two sums of $55 and $35. No such condition exists in the case at bar. The only amount that is shown ever to have been earned by the plaintiff was $75 per month as janitor, the duties of which he was unable to perform. Other kinds of

work are referred to in the evidence as having been performed by the plaintiff, but there is no testimony showing what, if anything, he had earned or was able to earn.

The last case cited by defendant is that of Aultman v. La. Central Lmbr. Co., 14 La. App. 179, 128 So. 683, 684. In a well-considered opinion in that case, written by the late lamented Judge Webb, it was held as follows:

"The evidence conclusively establishes that Aultman had, for a considerable period of time since the award, earned an amount in excess of the amount earned prior to the accident, and the award being based on disability to work, and the period and amount of compensation being fixed at the probable duration of disability and earnings of the employee, it is obvious that the facts relative to his employment subsequent to the award indicate that Aultman had recovered from the disability existing at the time of the award, and that the award should be modified."

No such proof was produced in the case at bar. The cited case does not in any manner support the demand of the defendant herein to have the judgment of the plaintiff declared discharged and satisfied.

It is true that the plaintiff has worked some since the judgment of this court awarded him compensation. But it has not been shown that these efforts have been of a nature sufficient to take him out of the class of the totally disabled.

In the case of Maleby v. Gulf Refining Co. of La., 1 La. App. 81, this court said:

"We do not think that it was the intention of the act to compel injured employees to work out of dire necessity and in order merely to maintain a subsistence for himself and those dependent upon him for support."

■ We think a corollary to that statement of the law would be that, even though one suffering from disability does work and earns money in order that those dependent on him might have a better living, this effort on his part will not deprive him of his compensation, particularly in cases where the efforts are strained and sporadic.

In the case of Becton v. Deas Paving Co., Inc., 3 La. App. 683, it was held that, even though an injured party may be earning a fairly good wage, that fact alone will not determine the existence of his disability and his right to compensation under the law. In spite of the fact that the plaintiff was earning about his usual wages at the time of the trial, it was found and held by this court that the plaintiff was not able to earn anything at manual labor, and compensation was awarded to him on the basis of permanent total disability for a period not exceeding four hundred weeks.

In the case of Charley Scott v. Standard Pipe Line Co., 3 La. App. 77, Judge Carver very ably discusses the problem of determining the various degrees of disability as follows:

"A careful inspection of this language makes it apparent that the basis of the injured workman's right of recovery is his having suffered an injury producing partial disability to do work of any reasonable character.

"It is true that the measure of his right is 65% of the difference between the wages he received at the time of the injury and those which he is able to earn thereafter; but while this difference is prescribed as the measure of his right, his right is not made to depend on whether he does or does not actually earn anything after the accident.

"It is apparent, too, that the act does not prescribe the wages he actually earns after the accident as a factor in measuring the compensation and, in our opinion, such wages, even where some are earned, are not to be taken as the sole criterion of what he is able to earn. This would in many cases be an unsafe guide.

"Sometimes a workman can get the same wages per week as before but cannot secure employment so readily or so steadily.

"Sometimes he is given a steady job by friends for sympathy and paid former wages. Sometimes the former employer will give him an easy job at the same wages for philanthropic motives, and, in some cases, it is contended, for the less worthy motive of minimizing the compensation for which he is liable.

"Sometimes other causes affecting the earning capacity intervene; as industrial expansion, to increase demand for labor with consequent increase of wages; or industrial depression, to reduce these; or sickness or another accident unrelated to that for which the employer owes compensation.

"Sometimes the workman might have means which would enable him to take a long rest without working to increase his chance of recovery.

"In some cases it is charged that he deliberately earns less than he could for the fraudulent purposes of increasing his claim for compensation.

"In some cases the trial might be held too soon after the accident to afford opportunity to test earning capacity by actual experience.

"In some of such cases, the test of wages actually earned could not be applied at all, and the rest it is not an absolute criterion, but merely a guide to be considered along with other factors in determining what the workman's earning capacity is.

"The wages actually earned could be a safe sole criterion only where all conditions were

the same as before the accident, where neither the workman nor the employer was finessing for position, and where the work the workman gets is obtained and paid for solely on the basis of its worth.

"We find no warrant in the law for denying compensation for admitted or proven partial disability to do work of a reasonable character merely because the proof does not show what the workman can earn by the method of showing what he does earn.

"What the court is required to do is to ascertain what he is able to earn. Where he does not earn anything, it is more difficult to do this than where he does; but it is not more difficult than many other problems which courts must solve as best they can by the use of discretion, their knowledge of men and affairs, and by decisions in analogous cases. In personal injury suits courts have no criterion but must fix damages as best they can. In claims for improvements the same thing must be done."

So, in the case at bar, it is our problem to take into consideration the fact that on every occasion that plaintiff has undertaken any kind of work he has manifested a marked degree of disability, both mental and physical. We do not have to connect this disability with his injury. That has already been done in a former opinion of this court, and every finding of fact in that opinion is now res judicata. The plaintiff may have forced himself to work on occasions to earn money for the support of his family, but the very manner in which he performed it indicates that he was not *able* to do the work in the sense that the word is used in the law.

After a careful and painstaking examination of the record in this case, we find that the testimony clearly shows that there has been no improvement in the condition of the plaintiff; that his disability is the same that it was when the case was first tried and when the former opinion of this court awarded him compensation on the basis of permanent total disability. The judgment appealed from is erroneous and will have to be reversed.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment of the lower court discharging the defendant, Gifford Sand & Gravel Company, from making any further payments of compensation under the original judgment in this suit, and decreeing that the said original judgment herein has been satisfied and paid in full, be, and the same is hereby, reversed, avoided, annulled, and set aside. It is further ordered that the rule issued herein be recalled and discharged, and that the demands of the defendant be rejected at its cost in both courts. It is further ordered that the order of the district court suspending

payments of compensation under the former judgment rendered in this case be, and the same is hereby, annulled, vacated, and set aside, and the defendant is hereby ordered and directed to resume said payments as of the date when they were suspended; that all past-due payments be paid immediately upon the finality of this judgment, with 5 per cent. interest upon each suspended payment from the date of its maturity.