### THOMAS v. BERWICK ICE & FUEL CO.
### et al.
### No. 1085.

Court of Appeal of Louisiana. First Circuit.

Jan. 24, 1933.

C. A. Blanchard, of Morgan City, for appellant.

Chas. L. Wise, of Morgan City, for appellees.

MOUTON, J.

Plaintiff, Ayers Thomas, instituted this suit claiming damages under the Employers' Liability Act (Act No. 20 of 1914, as amended) against defendant companies.

He abandoned his suit against the Maryland Casualty Company, which restricts his demand against the two other companies. His suit was rejected. He appeals.

He claims that while removing ice blocks for sale for the two companies, a block of ice fell on his great toe, bruising or smashing it, which later necessitated its amputation at the Charity Hospital. He makes the averment in his petition that the accident occurred about the 23d day of May, 1931, but in his testimony he is positive that it happened on that date.

It is shown that one of the defendants, the Louisiana Oyster & Fish Company, went into the hands of N. H. Breaux, receiver, who was also secretary-treasurer of the Berwick Ice & Fuel Company, the other defendant, which bought ice from the Public Utilities Company and sold it to the trade in Berwick. The Berwick Ice & Fuel Company went out of business on May 17, 1931, when its last order went out to the Public Utilities, as appears from the evidence of N. H. Breaux who was familiar with its business as its secretary-treasurer.

Johnson, the bookkeeper of that company, died and was succeeded by Herman Hebert. Hebert testifies that the Berwick Ice & Fuel Company was not in business after May 17, 1931.

Plaintiff, Thomas, had been an employee of the Berwick Ice & Fuel Company during several years before the time of his alleged injury.

Breaux, secretary-treasurer of the Berwick Ice & Fuel Company, says that the last payment made to plaintiff by that company for his wages as an employee was by check on May 18, 1931. This check is in evidence, and was drawn by Norman, then president of that company, now deceased. Plaintiff admits that this check was the last given him.

Breaux testifies that out of the payment by that check to plaintiff, the latter retained $5 to pay on the price of a truck which Norman agreed to sell him to go into the ice business for his own account.

Nitti, witness for defendant, ice dealer in Berwick, testifies that about five or, six days after the Berwick Ice & Fuel Company had closed its business plaintiff was "in business for himself."

The foregoing evidence shows that the Berwick Ice & Fuel Company had gone out of business on May 18, 1931, and, consequently, that plaintiff could not have been an employee of that company on May 23, 1931, when he

testifies, with assurance, that he received the injury.

Breaux, testifying in reference to the Louisiana Oyster & Fish Company, the other defendant, says that the only employees of that company during the month of May, 1931, were Gayer, Hebert, Reneaud, and Lasseigne; that it closed its store May 22, 1931, and during that month used ice only in the store.

Hebert, to whose testimony we have hereinabove referred, also testifies to the fact that plaintiff was not an employee of the Oyster & Fish Company in May, 1931.

Against the testimony of Hebert and Breaux that plaintiff was not an employee of either company in May, 1931, we have the evidence of Joseph Gayer, formerly president of both companies, who testifies that plaintiff was injured in May, 1931, about the 23d, as by plaintiff alleged. This witness testified from memory and not specifically in reference to dates, as appears from the evidence of Breaux and Hebert.

Asked as to the date the injury occurred, Gayer says: "I think it was back further than any one stated; that before the Receivership, that he went back to the doctor two or three times etc."

The proof is that plaintiff had been suffering with his toe for several years prior to the alleged injury, and the evidence of Gayer indicates that this witness got confused in the dates and had reference to plaintiff's previous trouble. Gayer's testimony is not sufficient to overcome the evidence given by Breaux and Hebert on the issue of fact above discussed.

■ It was incumbent upon plaintiff to show that he was an employee of defendant company or companies at the time of the accident, and was then rendering services for the companies or for one of them.

■ In reference to that question, counsel for plaintiff refers to the liberal construction given by our courts of the Employers' Liability Act in favor of the employee. This liberal interpretation applies to the provisions of that act, but not to the evidence required to establish the claim of the employee. In a case of this character or of any other nature, plaintiff must prove his demand with legal certainty. If this doctrine of liberal interpretation was to apply to the evidence required, it might be woven and expanded into a mantle of charity to cover many sins of commission and omission.

■ Plaintiff has failed to prove his employment at the time of the alleged injury as the law requires. As a matter of fact, the preponderance of the evidence is, that he was not then an employee of either company, and

was rather engaged in the ice business on his own account.

Plaintiff, the record shows, was treated for his toe by Dr. De Gravelle. There appears to be some conflict in the evidence as to whether the doctor attended to him on June 1, 1931, or on the 17th of that month. We will say it was on the first of June, as seems to be the contention of counsel for plaintiff.

■ At that time, Dr. De Gravelle says, plaintiff was suffering with a chronic ulcer of the toe. If he had been injured on the 23d of May, there could not have been a chronic ulcer June 1, 1931, or later, June 17th, should we accept the later date as being the time plaintiff was treated. The doctor describes the trouble as "a large black ulcer underneath the Planters surface." It would seem to the layman that a sore so located could not have been the result of a smash from a block of ice falling on the foot. Further, Dr. De Gravelle says, that four or five years prior to June, 1931, he had treated the same toe for plaintiff. He says the ulcer healed four or five times and "then broke out again." Finally, the doctor says the first time he attended to plaintiff the sore was "slight and as time went on it would heal up and then break out again. We have seen diabetic ulcers go on for years."

All the evidence on this phase of the case shows that this ulcer had existed for several years prior to the alleged injury, and this testimony is in line with the chart of the Charity Hospital filed in the record.

It is almost impossible from such evidence to escape the conclusion that plaintiff had a sore or injury to his toe which originated long before the 23d of May, the alleged date of the accident, and that in the course of time it developed into a chronic ulcer. Hence he cannot recover for the alleged injury.

In conclusion, it may be proper to remark that neither in plaintiff's petition, brief, or evidence is it claimed that plaintiff had a dormant disease which had been activated or aggravated by the alleged accident, but the sole contention is that he suffered the injury from the fall of a block of ice on his foot, for which he cannot recover.

Even conceding that plaintiff could recover for the accentuation or aggravation of a prior dormant trouble, though his demand does not ask for relief on that ground, he could not, however, recover in this case, as he alleges that he suffered the accident on May 23, 1931, at which time, the evidence shows, he was not an employee or in the service of either of defendant companies.

The only conclusion that we can reach of law or fact is that the court correctly rejected the demand of plaintiff.

Judgment affirmed.