## LEDEUX v. GRANT TIMBER & MFG. CO. OF LOUISIANA, Inc.*
### No. 4390.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 6, 1933.

White, Holloman & White, of Alexandria, for appellant.

Leo Gold, of Alexandria, for appellee.

DREW, J.

Plaintiff instituted this suit under the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914, and amendments thereto), claiming compensation at the rate of $7.02 per week for a period of 400 weeks. He alleged that he received an injury in an accident while attempting to catch a load of lumber as it was tipped back from a lumber stack; that "the muscles, nerves, ligaments and other things in or about his abdomen were seriously injured and impaired, and his spinal column and hips and the nerves therein seriously and permanently impaired; that among the injuries thus received was a rupture and hernia in his right side." He alleged total, permanent disability to perform work of any reasonable character.

Defendant admits that on February 7, 1931, plaintiff was at work for it and received a strain resulting in a traumatic hernia of his right side which incapacitated him for work for a period of sixteen weeks, for which time he was paid compensation; that it also paid his doctor's bill for an operation, amounting to $179.70; that at the end of sixteen weeks he was cured of any injury received on February 7, 1931; and if he is now suffering any pain or incapacity for labor, it is the result of venereal disease or other disease for which defendant is not responsible.

On these issues, the case was tried below, resulting in a judgment for plaintiff in the sum of $7.02 per week, for a period of forty weeks, less a credit of $112.32 paid as compensation by defendant for sixteen weeks; and for 5 per cent. interest annually on each payment not consumed by the credit.

Defendant has appealed from this judgment, and plaintiff has answered the appeal praying that the judgment be amended by increasing it to the amount sued for.

The only question to be determined is whether plaintiff was cured of the injury received at the end of sixteen weeks, or was still incapacitated to work at that time. Plaintiff received the injury on February 7, 1931, and was operated on for hernia on February 28, 1931. There is no claim made here for any injury other than the hernia. He remained in the hospital for fourteen days,

when he was released and returned to his home in Selma, with instructions not to work for eight or ten weeks. After his return to Selma, plaintiff was under the observation of Dr. Adams, who, after examining him in May, instructed him to go back to work, which he did in June, and worked for two or three days, when he quit. Plaintiff later went to Alexandria where he remained for about one month, then went to Melville where he had some relatives, and remained there until the last of November. This suit was filed June 30, 1931, a short time after plaintiff went back to work and quit.

The operation was perfect in so far as the hernia was concerned and the suturing of the wound, but plaintiff's theory is that in suturing the wound, a nerve was ligated, which is now causing him great pain and incapacitates him for labor of any reasonable character. This is the sole contention of plaintiff.

Defendant contends it is not true, and that plaintiff is well and able to perform labor; if not, his trouble is due to gonorrhea, and not to the operation.

Plaintiff offered the testimony of two doctors who made one examination of plaintiff and who testified that, in their opinion, based on the manner in which plaintiff carried himself and his expressions of pain when the area of the wound was palpitated, there is a ligated nerve in the wound, and are of the opinion that gonorrhea could not cause the pain in the area that plaintiff claims to suffer. He also offered the testimony of one other doctor who examined plaintiff about the time of trial, and who testified that, in his opinion, there was a ligated nerve in the wound; however, it was possible for plaintiff's condition, as claimed by him, to be due to gonorrhea. Plaintiff also offered the testimony of some lay witnesses to the effect that he could not rest at night and had to keep his right knee slightly elevated in order to get relief from pain when in bed. Plaintiff himself testified to the pain in his right side and his inability to perform manual labor. He walks in a somewhat stooped position and holds his right leg slightly stiff, as if favoring his right side.

Dr. Adams, the defendant company's physician, who treated plaintiff immediately after he was injured and sent him to Alexandria for the operation, testified that from October to December 30th, he treated plaintiff for a rather severe case of gonorrhea, but had apparently effected a cure, as far as outward appearances were concerned; that during that time, plaintiff carried himself in the same stooped position he did at the time of trial.

The three doctors who examined and operated on plaintiff stated that he was suffering with a potential hernia, and the operation therefor was very simple; that plaintiff suffered very little, if any, while in the sanitarium. During the first 72 hours, he was given three small doses of morphine and after that, none; he did not complain of any pain, and, when he left the hospital, was in fine spirits. They all feel sure there was not any nerve ligated when the wound was sutured, and are positive if there had been, that plaintiff would have made it known, due to the pain it would have immediately caused him. It is not denied by any doctor that a ligated nerve would not cause immediate pain.

After plaintiff returned to Selma and was under the observation of Dr. Adams, he did not at any time complain of pain, and carried himself erect. When in Melville, it is shown that he carried himself erect and performed hard labor on several different days, and about the middle of November, applied to the city marshal of Melville for a job digging ditches.

The preponderance of the medical testimony is that gonorrhea can give trouble for many years after it is supposed to be cured, and that this disease could cause the very trouble plaintiff is claiming to have.

The only contention made by plaintiff in this case is that a nerve was ligated, thereby causing him the pain he claims to suffer. To recover, it is incumbent upon plaintiff to prove his case with some certainty, which he has failed to do. There is a possibility that a nerve might have been ligated, but, under the testimony, the preponderance of it is against this possibility. The medical testimony and the actions of the defendant from the date of operation until the suit was tried tend strongly to the suggestion that plaintiff is a malingerer. He was paid compensation from the date of injury until June 1, 1931. He worked two or three days soon thereafter and quit, he claims, because of pain. Plaintiff did not request further treatment, but secured a lawyer, and soon thereafter filed suit. The suit was prepared on June 26, 1931, and filed on June 30th, after demand for compensation had been made prior thereto.

Plaintiff, at the time of the accident, was receiving wages of $10.80 per week. His compensation was $7.02 per week, a difference of only $3.72 in wages, whether working or not; a rather strong temptation for a young negro. Regardless of the suggestion that plaintiff is a malingerer, we are convinced from all the testimony in the case that the operation for hernia was perfect and that plaintiff was not, after June 1, 1931, suffering any incapacity, due to the operation, and that if he was incapacitated in any manner, it was due to gonorrhea.

The lower court gave judgment for forty weeks, or up to the time plaintiff was found

working in Melville, La., on the theory that defendant had failed to show that plaintiff had worked prior thereto. We think the judgment is incorrect, and that the demands of plaintiff should have been rejected. If plaintiff had requested further treatment, which was the proper thing for him to have done, if he was really in pain, he would have a better standing in court. After he filed suit for compensation, it is unreasonable to think he would work at a place where he might be observed by defendant. When he was in Melville, he no doubt felt he was hidden from the eyes of any one interested in the defense of this case. In May, before he filed the suit, he was walking erect; in Melville, after he filed the suit, he was walking erect; at the trial, he was stooped. He made no complaint of pain in the hospital; he made no complaint to Dr. Adams in May; and we are convinced that if plaintiff had cared to, he could continue to work when he went back to work in June.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and the demands of plaintiff be rejected, at his cost.