## HINTON v. LOUISIANA CENTRAL LUMBER CO.

### No. 4544.

Court of Appeal of Louisiana. Second Circuit.

June 5, 1933.

Cas Moss, of Winnfield, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

MILLS, Judge.

Plaintiff brings this suit under the Workmen's Compensation Act (Act No. 20 of 1914, as amended), alleging that he was employed by defendant company as its timber patrol agent; it being one of his duties to ride daily through defendant's timber to protect it against trespass.

Being met with an exception of no cause or right of action based on the contention that the employment alleged was not hazardous, he filed a supplemental petition setting out that as a timber patrol agent he was required to employ labor and to supervise and direct the cutting into logs and the hauling of all timber which had been felled by fire, winds, or other causes.

The lower court sustained the exception and dismissed the suit. Upon appeal this judgment was reversed ([La. App.] 139 So. 554), the court holding on the authority of Youngblood v. Colfax Motor Company, 12 La. App. 415, 416, 125 So. 883, and Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303, that one whose duties are partly hazardous and partly nonhazardous, even though injured while performing nonhazardous duties, is entitled to compensation. That it is the business or occupation in which the person is employed, rather than his particular duties, that determines the application of the act. That the pleadings as a whole set forth facts which, if proven, are sufficient to maintain.

the action. On rehearing [La. App.] 142 So. 616), this finding was approved, the case was remanded for trial, the actual nature of plaintiff's employment to be determined on the merits, that issue being raised by the answer, as well as by the exception. After trial the lower court in its written opinion found on this question:

"The Circuit Court seems to lay down the proposition that if Mr. Hinton was not engaged in some hazardous branch of defendant's business or was not engaged in the logging department and was only engaged in timber cruising that he was not therefore engaged in a hazardous branch of defendant's business and would not therefore be entitled to compensation for an injury received while cruising timber. If the evidence shows that Mr. Hinton's duties were to supervise or direct a part of the logging department then he would be under the Compensation Act and any injury received by him while cruising timber would be subject to compensation if, as stated, his duties included a hazardous branch: to-wit, logging of defendant's industry.

"Now on this point all of the officials of defendant company that testified, swore positively that Mr. Hinton had nothing whatever to do with the logging end of the industry. That he was not hired to do this, that his duties were confined solely to timber cruising, and that they had a woods foreman, engaged in the logging end of the business, whose sole duty it was to direct the logging end of its business and that Mr. Hinton had nothing to do with this branch of the business. Mr. Hinton testified that he possibly on two occasions, did give directions in connection with the logging of timber. He says some of his neighbors asked that they be allowed to haul some down timber and that he communicated these requests to the logging foreman and the logging foreman sent word back by Mr. Hinton to these neighbors to go ahead and pick up that timber and they would get the usual price paid for logging. Mr. Hinton delivered these messages back to his friends and they did this particular logging.

"On another occasion when fire would destroy timber and get in the down timber Mr. Hinton had the tops and butts sawed off of this down timber to prevent the fire from destroying the logs. On another occasion Mr. Hinton scaled some timber that was down and directed or showed the parties the roads whereby they could get certain timber out of the woods. Now if the above operations constituted logging operations, then Mr. Hinton would be entitled to compensation for the injury alleged to have been received unless his rights to compensation should be barred by his failure to notify the company.

"This court is of the opinion that the isolated cases performed by Mr. Hinton did not constitute him as engaged in the logging business of this company. If merely delivering the message from the logging foreman to some friend or showing some party the road or just getting out and scaling some timber on an isolated occasion or having the butts and tops sawed off some down timber constitutes one end of the logging industry, then Mr. Hinton would come within this branch of the industry, but this court is of the opinion that the isolated instances as shown by the testimony do not bring Mr. Hinton within the logging branch of the industry and this court bases this opinion very largely on this proposition."

In the original opinion of this court on the exception of no cause of action, "logging" was defined to be: "The business of felling trees, cutting them into logs, and transporting the logs to saw mills or markets." (139 So. 554.) We agree with the trial judge in his finding of fact and in his conclusion that the few isolated instances over a long period of time in which plaintiff acted as a messenger, a guide in pointing out roads, a scaler or estimater of down timber or a conservation employee in saving some from fire, did not constitute logging.

In Dewey v. Lutcher-Moore Lumber Company, 151 La. 672, 92 So. 273, 274, the court said:

"While defendant was performing services at a logging camp, yet, within the purview of the statute, he was not performing them in logging itself, nor was he employed to do so. While his employment inured indirectly to such operations, yet he was not engaged in them."

In the present case the trial court considered three other propositions as follows:

Did the plaintiff receive an injury?

Is he permanently and totally disabled as a result of the injury?

Was notice of injury given defendant?

In support of the first of these questions we must depend almost entirely upon the testimony of plaintiff. He says that while riding alone through the timber his horse bogged down in a low spot. In lunging to extricate itself, it fell forward on its breast, throwing plaintiff forward against the saddle horn and hurting his right side so severely that he was temporarily blinded and compelled to lie upon the ground for several hours. That he made his way home with difficulty and was not thereafter able to ride a horse. That he soon became completely incapacitated due to "injuries and bruises of the flesh and injuries to the prostate gland to such an extent that he has suffered the loss of the use of said prostate gland." The trial court said on this point:

"I have no reason to doubt that Mr. Hinton's horse stumbled and fell and that he was thrown against the pommel of the saddle in the manner described by him, unless it be

**480**

based upon the somewhat indefinite testimony which Mr. Hinton gave and the somewhat conflicting statements he made during his testimony."

We think an even graver reason to doubt at least the severity of the accident is plaintiff's failure to give notice of or complain of the accident. His wife, brother, and one neighbor say he told them of the occurrence; but other neighbors say they never heard of it until suit was filed, more than nine months later. It is alleged to have occurred on May 29, 1930. On the 7th day of June he was taken by his brother, also a physician, to Dr. B. M. McKoin, a specialist in urology, practicing in Monroe, La. Plaintiff admits that though questioned as to his condition he told the doctor nothing about any accident, his only reason given for not doing so being, "Dr. McKoin didn't ask me." He also admits that he did not tell Dr. Graves, the first physician who examined him, about the accident, giving the same excuse, "He did not ask me."

Though sent to the Charity Hospital, at Shreveport, for treatment, he admits he never told the authorities of any accident, claiming that he was unconscious while there, nor did he tell Dr. Hankins who treated him at Shreveport, until he had been discharged from the Charity Hospital and returned to Shreveport on a special trip.

Though he saw his employers on several occasions and discussed with them his sickness and medical expenses, they had no notice or knowledge of any accident until the receipt of a letter from plaintiff's attorney nine months after the alleged occurrence. We think that where an accident is alleged to have occurred without witnesses other than complainant, and without other corroboration, the surrounding circumstances should bear every earmark of good faith. It is inconceivable to us that a man suffering such a severe accident should not mention it to physicians treating him for the alleged resulting injury. The history of the case is the first thing inquired into by the physician. Like the trial judge, we cannot but doubt the occurrence of any accident. We are certain it could not have been as severe as described by plaintiff.

Only the most severe injury could damage the prostate gland. The only thing upon which the opposing experts agree is that it is the best protected gland in the whole body.

We agree also with the trial judge that plaintiff has proven that he is permanently incapacitated from doing work of a reasonable character, but that there is grave doubt that his disability is traceable to the injury alleged.

■ There is the usual sharp conflict in the medical testimony, which, however, in this case preponderates largely in favor of defendant. There is no doubt that plaintiff is suffering from a serious affection of either the bladder, kidney, or prostate gland. It would serve no purpose to review the many pages of medical testimony. After reading it all, the most that can be said for plaintiff is that his present trouble might have been caused by a trauma. But it could, with at least equal probability, have been caused by other agencies.

This degree of proof does not meet the legal requirements. The liberality of construction of the Workmen's Compensation Act extends only to the provisions thereof and not to the proof required upon the trial on the merits. Thomas v. Berwick Ice & Fuel Company (La. App.) 145 So. 384. In compensation cases as in all others, the facts must be established with legal certainty. Gradney v. Standard Fruit & Steamship Co. (La. App.) 144 So. 541; Furlow v. Maison Blanche Co., 2 La. App. 351; Lampley v. Standard Brick & Clay Products Co., 8 La. App. 300.

■ Where conclusions of fact of trial judges in compensation cases are not manifestly erroneous, an appellate court is not justified in reversing the judgment. Ledeux v. Grant Timber & Mfg. Co. (La. App.) 145 So. 701.

■ We are prepared to go further than the grave doubt of the trial judge and hold squarely that plaintiff has failed to prove with the required legal certainty a causal connection between the alleged injury and his present disability.

Having found three reasons why the judgment rejecting plaintiff's demand should be affirmed, we now pass to the fourth question —that of notice.

■■ As did the trial judge, we find as a fact that the first notice defendants had of any accident was by a letter received by them from plaintiff's attorney more than nine months after its alleged occurrence. This despite the fact that plaintiff discussed his condition with company officers several times between the date of the alleged accident and the writing of the above letter and was in correspondence with them while in the hospital in Shreveport. Plaintiff offers no excuse for this failure, beyond a half-hearted claim which is strongly contradicted that he told the officers of the accident some time in August. It is shown that defendants had posted the printed instructions as to notice of accidents required by this act.

Section 11 of Act No. 20 of 1914, as amended by Act No. 247 of 1920, reads:

"That no proceeding under this act for compensation shall be maintained unless notice of the injury shall be given to the employer within six months after the date of injury or death. No such notice shall be held invalid or insufficient by reason of any inaccuracy in stating the time, place, nature or cause of the injury, or otherwise, unless it is shown that the employer was in fact mis-

led to his injury thereby. Such notice may be given or made by any person claiming to be entitled to compensation, or by any one in his behalf.

"Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, or his agent or representative, had knowledge of the accident, or that the employer has not been prejudiced by such delay or want of notice."

From the peremptory language of section 11, it appears that want of notice is a good defense unless the case is brought within some exception to the rule.

■ As to the qualifications in subsection 2, we find as a fact that the employer had no actual knowledge of the accident until the demand made upon it, and that it has been seriously prejudiced in several ways by this delay, notably by lack of a timely medical examination by its own experts, by loss of the opportunity to investigate the facts of the accident soon after its alleged occurrence, and by the loss of important records.

The purpose of notice is well explained in the case of Dorb v. Frederick Stearns & Co., 180 App. Div. 138, 167 N. Y. S. 415, 417, cited in 78 A. L. R. 1233:

"The statutory notice should not be regarded as a mere formality and dispensed with, unless the circumstances clearly indicate that no prejudice has resulted to the employer and insurance carrier. The statute confers benefits on the working man far beyond what theretofore existed. In the present case, for instance, so far as the facts are disclosed, the claimant would have no cause of action against the employer independently of this statute. One of the requirements of the statute is that employees shall notify the employer in the manner provided by the statute as a condition of having the benefits which it confers. The Legislature has seen fit to safeguard the rights of employers and insurance carriers by requiring written notice to be given within a certain time setting forth the details of the accident. A very essential and important purpose of this notice is that the employer may have the benefit of an early investigation of the circumstances surrounding the alleged accident. Any tribunal assumes a heavy responsibility when it judicially determines that any investigation by the employer, if seasonably made, would have been fruitless. Of course,

there are cases where the circumstances are so plain that such a decision may well be made. Technicalities should be brushed aside, and a liberal application of the statute should be made in favor of claimants. Their path should not be beset with difficulties. But, on the other hand, before the money of an employer or insurance carrier is appropriated in payment of such claims, they should be given full and ample opportunity to investigate the claims and the circumstances of the accident. That is the reason why the statute with such particularity and in such detail makes minute provision in reference to the notice."

The above case is cited in the very complete annotation on the subject of notice, found in 78 A. L. R. page 1233. From an examination of it and the cases cited, it is apparent that the prevailing rule in other states is that failure to give notice of the accident and injury, within the required time, is by force of statute a bar to compensation, unless excused or waived.

This note and the cases cited show that it is also the rule in a majority of the other states that the burden of proving notice, and in the event of failure of notice, of lack of prejudice, is on the claimant. This state seems to be an exception to that rule, as in Clark v. Alexandria Cooperage & Lumber Co., 157 La. 135, 102 So. 96, 97, our Supreme Court has held:

"A failure to notify a defendant of an accident is a matter of defense, and it does not have to be alleged affirmatively in the petition."

This in spite of the fact that in enumerating the things that the petition must contain, subsection 1 (A) of section 18 of the act (as amended by Act No. 85 of 1926) provides, " * * * the knowledge of the employer or notice of the occurrence of the accident and injury."

Though the holding is not supported by the citation of any authority, it is the last expression on the subject by our highest court.

We are not called upon to follow or ignore this decision, as it does not affect the present case; we having found that prejudice has been affirmatively proven, as well as the absence of any excuse for the failure of plaintiff to give the required notice.

The judgment of the lower court rejecting plaintiff's demand is affirmed.